## ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* STATE OF ARKANSAS.

### ERROR TO THE SUPREME COURT OF THE STATE OF ARKANSAS.

No. 111.   Argued January 26, 27, 1910.—Decided April 4, 1910.

Where the constitutional defenses asserted in the answer, and embraced in the instructions asked and refused, in an action for penalties for violating an order of a state commission are not confined to the reasonableness of the order as such, but also challenge the power of the State to inflict the penalty at all under the circumstances disclosed by the answer, the judgment does not rest on grounds of local law alone, but a Federal right has been set up and denied which gives this court jurisdiction to review the judgment under § 709, Rev. Stat.

A state statute which compels a railroad to distribute cars for shipments in a manner that subjects it to payment of heavy penalties in connection with its interstate business imposes a burden on its interstate business, and is unconstitutional under the commerce clause of the Constitution; and so held in regard to the Arkansas act and order of the commission in regard to distribution of cars for shipment of freight.

Whether or not the rules of an association of railroads in regard to exchange of cars are efficient to secure just dealings as to cars moved in interstate commerce is a matter within Federal control, and it is beyond the power of a state court to determine that they are inefficient and to compel a member of the association to violate such rules.

85 Arkansas, 311, reversed.

THE facts, which involve the constitutionality under the commerce clause of the Constitution of the United States of a regulation of the Railroad Commission of Arkansas as to delivery of freight cars, are stated in the opinion.

. *Mr. Roy F. Britton,* with whom *Mr. Samuel H. West, Mr. Frank G. Bridges, Mr. William T. Woolbridge* and *Mr. Nicholas J. Gantt, Jr.,* were on the brief, for plaintiff in error:

Order No. 305 of the Railroad Commission of Arkansas, or §§ 6803 and 6804 of Kirby's Digest, as construed by the Supreme Court of Arkansas, being the necessary basis for this suit, and being, by their terms and as so construed, a burden on interstate commerce, there is a Federal question involved, and this court has jurisdiction. *Arrowsmith* v. *Harmoning,* 118 U. S. 194; *Leathe* v. *Thomas,* 207 U. S. 93; *Houston & T. C. Rd. Co.* v. *Mayes,* 201 U. S. 321; *Gibbons* v. *Ogden,* 9 Wheat. 1; *United States* v. *E. C. Knight Co.,* 156 U. S. 1; *Wabash &c. Ry. Co.* v. *Illinois,* 118 U. S. 557; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Johnson* v. *So. Pac. Co.,* 196 U. S. 1.

Order No. 305 of the Railroad Commission of Arkansas, and §§ 6803 and 6804 of Kirby's Digest, as construed by the Supreme Court of Arkansas in this suit, are void as regulations of interstate commerce.

A regulation of the instrumentalities of interstate commerce is a regulation of that commerce, and is repugnant to the commerce clause of the United States Constitution. *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *United States* v. *E. C. Knight Co.,* 156 U. S. 1; *Johnson* v. *Southern Pac. Co.,* 196 U. S. 1; *Cooley* v. *Board of Wardens,* 12 How. 299; *Hall* v. *De Cuir,* 95 U. S. 485; *Covington Bridge Co.* v. *Kentucky,* 154 U. S. 204; *Louisville Rd. Co.* v. *Stock Yards Co.,* 212 U. S. 132; *Miss. R. R. Com.* v. *Illinois Cent. R.,* 203 U. S. 335; *McLean* v. *Denver &c. R. Co.,* 203 U. S. 38; *Adams Express Co.* v. *Kentucky,* 214 U. S. 218; *Rhodes* v. *Iowa,* 170 U. S. 412; *Central Stock Yards Co.* v. *Louisville & N. R. Co.,* 118 Fed. Rep. 113; *Smith* v. *Alabama,* 124 U. S. 465; *Nashville, C. & St. L. R. Co.*

v. *Alabama,* 128 U. S. 196; *Hennington* v. *Georgia,* 163 U. S. 299; *New York &c. R. Co.* v. *New York,* 165 U. S. 628.

The order of the Railroad Commission and the statutes of Arkansas, as applied to the facts in this case, impose a direct burden on interstate commerce. *Houston & T. C. Rd. Co.* v. *Mayes,* 201 U. S. 321; *McNeil* v. *Southern Ry. Co.,* 202 U. S. 543; *United States* v. *E. C. Knight Co.,* 156 U. S. 1; *Wabash &c. Ry. Co.* v. *Illinois,* 118 U. S. 557; *Southern Ry. Co.* v. *Commonwealth,* 107 Virginia, 771; *S. C.,* 60 S. E. Rep. 70; *Minnesota* v. *Barber,* 136 U. S. 313; *Brimmer* v. *Rebman,* 138 U. S. 78; *Voight* v. *Wright,* 141 U. S. 62.

The order and statutes are void because Congress has legislated with respect to their subject-matter in the act to regulate commerce, approved February 4, 1887, and amendments thereto. U. S. Comp. Stat., 1901, pp. 3155, 3172; *Pennsylvania Rd. Co.* v. *Hughes,* 191 U. S. 477; *Gulf, C. & S. F. R. Co.* v. *Hefley,* 158 U. S. 98.

Order 305 and the statutes of Arkansas are void, because they are unreasonable, and their enforcement constitutes a taking of property without due process of law. They are, therefore, in conflict with § 1 of the Fourteenth Amendment. *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Houston & T. C. R. Co.* v. *Mayes,* 201 U. S. 321; *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362; *Covington Turnpike Road* v. *Sandford,* 164 U. S. 578; *L. S. & M. S. R. Co.* v. *Smith,* 173 U. S. 684; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Henderson* v. *Mayor,* 92 U. S. 259; *Chicago &c. R. Co.* v. *Minnesota,* 134 U. S. 418; *Lawton* v. *Steele,* 152 U. S. 133; *St. L. & S. F. Co.* v. *Gill,* 156 U. S. 649; *Lochner* v. *New York,* 198 U. S. 45.

*Mr. Hal Norwood,* Attorney General of the State of Arkansas, and *Mr. F. E. Brown,* for the defendant in error, submitted:

For the statute law of Arkansas concerning furnishing of cars and undenied allegations of complaint filed thereunder, see act of March 11, 1899, Acts 82–99; Kirby's Dig., Ark., §§ 6787, 6286.

For the law of Arkansas concerning cars, as construed by the Supreme Court of Arkansas, which recognizes and establishes the common-law excuses for failure to furnish sufficient shipping facilities, see *St. Louis Southwestern Ry. Co.* v. *Gin Company,* 77 Arkansas, 362; *St. Louis Southwestern Ry. Co.* v. *Leder,* 79 Arkansas, 59; *St. Louis, I. M. & So. Ry. Co.* v. *Cooperage Company,* 81 Arkansas, 373; and the case below, *Oliver* v. *Chicago, R. I. & P. Ry. Co.,* 89 Arkansas, 467, express no opinion as to interstate shipments.

In this case the validity of order No. 305 of the Railroad Commission is immaterial. This suit is based upon failure to furnish cars as required by law.

On this theory, too, the instructions to the jury presented the law and not the order of the Railroad Commission, and declared the duty of carriers to furnish cars "without undue and unreasonable delay" (not in five days as in the Commission Order 305) and declared such duty in the language of the Supreme Court declaring the common-law duty to furnish cars and not in the language of Order 305.

Accordingly, the Supreme Court of Arkansas sustained this suit as one instituted for a violation of statute (not for a violation of rule of Railroad Commission), the language of the opinion of the lower court on this point being as follows: "Order 305 is not unreasonable on the ground that it contains no exception whatever, but requires the cars ordered to be furnished within five days in all cases and under all circumstances. But the order should be construed, if reasonably possible, to uphold its validity; and the Supreme Court of Arkansas has not construed this order as creating an absolute duty to furnish cars, but on the contrary, has in effect said, that the duty of a railroad company to furnish cars is no broader than the common-law duty, whether the railroad be notified to furnish cars under the statute or the rule of the Railroad Commission."

There is no Federal question involved. The statutes and decisions of the Arkansas Supreme Court do not seek to make

the duty of railroads to furnish cars an absolute one and the Arkansas law is simply declaratory of the common law. The cars not furnished in this case were ordered for shipments within the State of Arkansas—intrastate business.

The law of Arkansas which is simply declaratory of the common law requiring railroads to furnish cars, subject to reasonable excuses, is not a burden on interstate commerce. As to *Houston & Tex. Cen. Ry.* v. *Mayes*, 201 U. S. 321, see Calvert on Reg. of Commerce, p. 5, preface 160, 96 and 77.

Referring to interstate shipments, plaintiff in error suggests in its brief, page 31 of the Interstate Commerce Act of 1877, requiring railroads to furnish cars, thereby covering the same subject-matter as the state legislation, has been construed in 10 I. C. C. Rep. 636; 2 I. C. C. Rep. 116; 109 Fed. Rep. 831, as making no requirement concerning furnishing of cars, except to prevent discrimination.

Even if the Interstate Commerce Act of 1887 had applied to furnishing of cars beyond discrimination, and even if the law in this case were being tested with reference to interstate shipments, the state law declaratory of the common law would be in aid of interstate commerce, Federal policy and Federal statute, and not inconsistent therewith.

MR. JUSTICE WHITE delivered the opinion of the court.

Prior to October, 1905, the Railroad Commission of Arkansas promulgated a rule by which, within five days after written application by a shipper, it was made the duty of a railway company, under the conditions prescribed in the rule, to deliver freight cars to such shipper for the purpose of enabling him to load freight. The rule in question, known as Order No. 305, is in the margin.[1]

[1] It is ordered by the commission that its rules be so amended that when a shipper makes written application to a railroad company for a car or cars, to be loaded with any kind of freight embraced in the tariff of said company, stating in said application the character of the freight,

Complaint was made by Philip Reinsch before the commission, charging the St. Louis Southwestern Railway Company with having violated this rule, in that it was fifty-one freight cars short in complying with written applications made at various times in October, November and December, 1905, and January, 1906, for the delivery at a station called Stutt-

---

and its final destination, the railroad company shall furnish same within five days from 7 o'clock a. m. the day following such application. Provided, that when a shipper orders a car or cars and does not use the same, he shall pay demurrage for such time as he holds the car or cars, at the rate of $1.00 per car per day, dating from 7 o'clock a. m. after the car or cars are placed.

Or, when the shipper making such application specifies a future day on which he desires to make a shipment, giving not less than five days' notice thereof, computing from 7 o'clock a. m. the day following such application, the railroad company shall furnish such car or cars on the day specified in the application.

When freight in carloads or less is tendered to a railroad company, and correct shipping instructions given, the railroad agent must immediately receive the same for shipment, and issue bills of lading therefor, and whenever such shipments have been so received by any railroad company, they must be carried forward at the rate of not less than fifty miles per day of twenty-four hours, computing from 7 o'clock a. m. the second day following receipt of shipment. Provided, that in computing the time of freight in transit there shall be allowed twenty-four hours at each point where transferring from one railroad to another, or rehandling freight is involved.

The period during which the movement of freight is suspended on account of accident, or any cause not within the power of the railroad company to prevent, shall be added to the free time allowed in this rule, and counted as additional free time.

The commission reserves the right on its own motion to suspend the operation of these rules, or any one or more of them, in whole or in part, whenever it shall appear that justice demands such action, and the commission will, upon complaint, hear and act upon applications for a like suspension.

Nothing in these rules shall apply to shipment of live stock and perishable freight where the rules of this commission or the laws of the State require the more prompt furnishing of cars or movement of freight than provided for by these rules.

gart, of a much larger number of freight cars. The commission found that the railway company was short in the delivery of cars as alleged, and that its failures in that respect not only violated Order No. 305, previously referred to, but also § 10 of an act of March 11, 1899, embodied in Kirby's Digest as § 6803. It also declared that by these violations of the statute and rule of the commission the railway company had become subject to penalties in favor of the State of Arkansas, as provided in § 18 of the act of 1899, being § 6813 of Kirby's Digest, which penalties were to be enforced as therein provided. Conformably to the section in question the prosecuting attorney for the proper county commenced this action in the name of the State against the railway company to recover penalties to the amount of $1,950. Rule No. 305 of the commission was recited, the proceedings before the commission were detailed, and the order made by the commission finding the defaults on the part of the railway company was set out, and upon these considerations the prayer for the statutory penalty was based.

A demurrer having been overruled, an answer was filed on behalf of the railway company. By that answer it was alleged that the company was engaged in the transportation of interstate shipments of freight over its line of railroad in the States of Arkansas, Illinois, Louisiana and Missouri, and that its equipment of freight cars for the transaction of its business, both interstate and state, was ample. That, anticipating the possible increase of business, both interstate and state, and as a precautionary measure, the company had, prior to the autumn of 1905, endeavored to contract for the construction of a large number of additional freight cars, but failed to do so, because the car manufacturers had such a press of work that they were unable to take the order. That thereupon, in an effort to provide for every future contingency, the corporation had at a very large expense commenced the construction of a plant of large capacity to enable it to manufacture its own cars and was pressing the same to completion in the

shortest possible time. It was alleged that at the time of the
alleged defaults there was an extraordinary demand for cars,
both for the movement of interstate and local traffic, and
when, as the result of this condition, the shortage developed
the company had equally distributed its cars to the shippers
·along its line, giving no preference to interstate over local
shippers or to local over those desiring cars for interstate·
shipments. It was alleged that it would have been impossible
for the company to comply with rule No. 305 without dis-
criminating against its interstate commerce shippers, and
therefore obedience to the rule would have resulted in a direct
burden upon interstate commerce. Referring to the interstate
commerce business of the company, which it was alleged moved
over its own line through the States of Arkansas, Illinois,
Louisiana and Missouri, and thence by .connecting roads
throughout the United States and Canada, it was charged the
burden imposed upon the company to deliver cars to local ship-
pers without reference to the effect and operation of such
delivery upon the interstate commerce business of the com-
pany would be a direct burden upon interstate commerce,
and therefore repugnant to the Constitution of the United
States, and that the same result would flow from enforcing the
command of the commission as embodied in its rule No. 305.
The rule, moreover, was especially assailed as being repugnant
not only to the commerce clause, but to the Fourteenth
Amendment, both because of the inherent nature of the duty
which the rule sought to impose, and also because of the un-
reasonable conditions which were expressed therein.

There was a trial to a jury. Without going into detail it
suffices to say that specific instructions were asked, in reiter-.
ated form, by the defendant company concerning its asserted
defenses under the Constitution of the United States; that is,
the repugnancy to the Constitution of the rule of the commis-
sion and of the statute imposing penalties upon it for its fail-
ure to furnish· cars. After verdict against the company for
$1,350 and judgment thereon, the cause was taken to ˙the

Supreme Court of the State of Arkansas, and from the action of that court in affirming the judgment (85 Arkansas, 311) this writ of error is prosecuted.

The question for decision will be simplified by analyzing the action of the court below—that is, by stating the facts which it deemed were established, and by precisely fixing the issues and principles governing the same which the court stated and applied. Clearing the way to consider the proposition which it conceived the case involved in its fundamental aspect, the Supreme Court of Arkansas at once disposed of the contention that the commission was without power to adopt rule No. 305 by the statement that the power to do so was expressly conferred by statutes of the State. The court did not pass on the contentions concerning the alleged conflict between the rule and the Constitution of the United States, because it was expressly declared that it was not at all necessary to do so. This was based upon the conclusion that the duty to furnish the cars which had been demanded arose from statutory provisions (Kirby's Digest, §§ 6803-6804), which were but expressive of the common law, and that the liability for the penalty which was imposed by the judgment below equally resulted, considering the default as alone arising from violations of the statutory duty.

The statutory duty to supply cars on application having been thus ascertained and the failure of the company to furnish after demand not being disputed, the court was brought to consider what it declared to be the only question in the case, that is, "Whether the undisputed evidence introduced by appellant presented a sufficient excuse for the failure to furnish the cars." In so far as adequate excuse could arise from the complete discharge by the company of the duty to equip its road with a sufficient number of cars, it was recognized that the proof was ample, indeed the court said:

"In fact, the appellant was shown to have a larger car equipment than the average freight carrying road, and the failure to furnish cars was wholly due to an inability to regain

its cars which were sent to other roads carrying freight from its own line."

Coming then to state the facts concerning the cause which the court expressly found was wholly responsible for the failure to deliver all the cars asked for, it was pointed out:

"The appellant is an originating line, originating about 70 per cent of its traffic and receiving about 30 per cent. To illustrate its situation, during the month of November, 1905, it had in revenue service 9,517 cars, of which it averaged daily 3,982 in use on its own lines, 5,525 off its line, and 2,519 foreign cars in use. In other words, a daily balance of exchange of 1,473 cars was against it, and its shortage in cars was only about 650 per day."

Directing attention to the fact that the preponderant originating business of the road led to a preponderance of interstate over domestic or local traffic, and that such interstate traffic would be greatly impeded, if not paralyzed, by breaking bulk at the state line and refusing to give continuous transportation, by not allowing its cars when loaded to move beyond its line to the roads of connecting carriers, the court was brought to consider whether, thus permitting the cars to move for the purpose of continuous interstate commerce traffic, was in and of itself a fault entailing legal responsibility under the statute for a refusal to deliver cars for local traffic when requested. In holding the negative of this proposition the court said:

"The evidence indisputably establishes that it is a benefit to the shipping public to interchange cars and not to refuse to send cars off the line. . . . It is unquestionably good for the public that the railroads of the United States have a system of interchange of cars, instead of each road hauling to its termini only, and thereby force reloading and reshipment. The inconvenience and expense of such a system would at once condemn it as failing to meet public requirements. It is unquestionably the policy of both State and Federal legislation to facilitate, if not require, an interchange

of cars. The most recent illustration of this policy is found in section 17, act April 19, 1907 (Acts 1907, p. 463). For one railroad company to be an Ishmaelite among its associates would operate disastrously to its shippers. The shippers of Arkansas expect the public carriers to put their cotton to the spinners in New England, and their fruits to the North, and their lumber and coal to the four quarters of the Union, without change from consignor to consignee."

Thus deciding that the mere delivery of cars for through transportation was not a factor in determining whether there was legal fault, the court came to consider whether there was anything in the arrangement by which the cars in question were permitted to go off the line, which in and of itself constituted fault and consequent responsibility for failure to furnish all the cars required in time of shortage. Reviewing the evidence on this subject it was found that the company was a member of an association known as the American Railway Association, which had adopted rules governing the interchange of cars from one road to another, with provisions for the return thereof and for compensation therefor, the association embracing and its rules governing ninety per cent of the railroads of the United States. Fixing thus the system which controlled the company in the interchange of its cars it was determined that the mere formation of an association for such purpose was not repugnant to the laws against combinations in restraint of trade, the court, after referring to various state decisions to that effect, saying:

"The result of these and other decisions, as summed up in an excellent text-book, is that these associations are lawful, and their rules and regulations, when reasonable, will be upheld. 2 Hutchinson on Carriers (3d ed.), § 861 Mr. Elliott says that such associations, formed for the purpose of making and enforcing reasonable regulations to facilitate business and secure the prompt loading, unloading, and return of cars, cannot be held illegal, upon the ground that the constituent companies by becoming members surrender their corporate

functions and control to the association. 4 Elliott on Railroads, § 1568."

Having thus sustained the right of the road to deliver its cars for the purpose of continuous transportation beyond its line in interstate commerce, and sanctioned the general method by which it was sought to regulate and control the transmission and return of such cars, that is, by membership in the American Railway Association, the nature and character of the rules of the association were considered. Without going into detail or following the statements of the court on the subject it suffices to say that, analyzing the rules of the association the court concluded that the regulations were inefficient in many respects, did not provide sufficient penalties to secure the prompt return of cars by roads which might receive the same, but on the contrary afforded a temptation in time of car shortage, inducing a road having the cars of another road to retain and use them, paying the penalty, as to do so would afford it an advantage. Pointing out that the general result of the operation of the rules of the American Railway Association for the interchange of cars had proven ineffective in the past, it was held that the company was at fault for delivering its cars to other roads for the movement of interstate commerce subject to the regulations of the American Railway Association, and therefore the penalty imposed in the judgment was rightly assessed.

As the penalty, which the court sustained, was enforced solely because of its conclusion as to the inefficiency of the rules and regulations of the American Railway Association, which governed ninety per cent of the railroads in the United States, the court was evidently not unmindful that the carrier before it was powerless of its own motion to change the rules thus generally prevailing, and therefore was necessarily either compelled to desist from the interchange of cars with connecting carriers for the purpose of the movement of interstate commerce, or to conduct such business with the certainty of being subjected to the penalties which the state statute pro-

vided. for.   We say this, since the court said (85 Arkansas,
322): "It may be better for the appellant to suffer these ills
than to sail under a black flag, and refuse to send its cars
beyond its line; that is not a question for the court.   Until
the appellant carrier shows reasonable rules and regulations
for the interchange of cars, it cannot avail itself of these rules
of interchange as causing and excusing its default to the
public, for the rules here shown have proved unreasonable
and inefficient before this default occurred."   And the gravity
of the ban on interstate commerce which it was thus recog-
nized would result from the ruling made cannot be more
vividly portrayed than by once again quoting the statement
of the court on the subject, saying: "For one railroad com-
pany to be an Ishmaelite among its associates would be
disastrous to its shippers."   If the railroad company, com-
pelled to be a law unto itself because of its inability to change
by its own isolated will the rules of the American Railway
Association, should prefer to subject itself to the penalties
inflicted by the state statute rather than bring disaster to its
shippers, the seriousness of the burden to which interstate
commerce would be subjected, cannot be better illustrated
than by saying that by the provisions of the state statute,
the penalty upon the carrier for each violation of the act or
of the rules and regulations of the commission was not less
than five hundred nor more than three thousand dollars.

When, by thus following the careful analysis made by the
court below, the contentions which the case present are cir-
cumscribed and the issues to which all the controversies are
reducible are accurately defined, we think no serious diffi-
culty is involved in their solution.   In the first place, it is
suggested by the defendant in error that no Federal question
arises for decision, and, therefore, the writ of error should be
dismissed.   This rests upon the theory that, as the court
below put the rule of the commission, No. 305, out of view
and declared in its statement of the case that no extraordinary
or unusual rush of business on the line of the defendant com-

pany occasioned the car shortage, therefore no ground of Federal cognizance remained, as, in other respects, the action of the court below was, in effect, placed purely upon matters of local concern broad enough to sustain its judgment. The contention is plainly without merit. It is to be conceded that the ruling of the court as to the irrelevancy of the rule adopted by the commission eliminates from consideration so much of the answer and of the instructions asked by the company and refused, relating to the repugnancy of the order to the commerce clause of the Constitution, both on account of its inherent operation and because of unreasonable provisions, which, it was alleged, it contained. But the constitutional defenses which were asserted by the answer, and which were embraced in the instructions asked and refused, were not confined to the mere order as such, but plainly challenged the power of the State to inflict the penalty for the failure to furnish the cars under the circumstances disclosed by the answer. And the ruling of the court, that the asserted power arose from the statute instead of from the rule adopted by the commission, but changed the form without in any way minimizing or obscuring the completeness of the Federal defense which was made in the pleading and necessarily passed upon by the court below.

Coming to the merits, we think it needs but statement to demonstrate that the ruling of the court below involved necessarily the assertion of power in the State to absolutely forbid the efficacious carrying on of interstate commerce, or, what is equivalent thereto, to cause the right to efficiently conduct such commerce to depend upon the willingness of the company to be subjected to enormous pecuniary penalties as a condition of the exercise of the right. It is to be observed that there is no question here of a regulation of a State forbidding an unequal distribution of cars by a carrier for the benefit of interstate to the detriment of local commerce. This is the clear result of the finding below as to the proportion of the originating traffic of the road and the extent of

the cars retained and those permitted to go beyond the line of the road for the purposes of interstate commerce. If it be that the court below was right in its assumption that the rules of the American Railway Association, governing, as was conceded by the court, ninety per cent of the railroads and hence a vast proportion of the interstate commerce of the country, are inefficient to secure just dealing as to cars moved by the carriers engaged in interstate commerce, that fact affords no ground for conceding that such subject was within the final cognizance of the court below and could by it be made the basis of prohibiting interstate commerce or unlawfully burdening the right to carry it on. In the nature of things, as the rules and regulations of the association concern matters of interstate commerce inherently within Federal control, the power to determine their sufficiency we think was primarily vested in the body upon whom Congress has conferred authority in that regard.

*The judgment of the Supreme Court of the State of Arkansas is reversed, and the case remanded for further proceedings not inconsistent with this opinion.*

MR. CHIEF JUSTICE FULLER dissents.