## BOSTON & MAINE RAILROAD ET AL. *v.* UNITED STATES ET AL.

No. 310.   Decided November 17, 1958.*

*Carl E. Newton* and *William T. Griffin* for the Boston & Maine Railroad et al., *Richard Swan Buell* for the New Jersey & New York Railroad Co. et al., and *Otto M. Buerger* for the Long Island Rail Road Co., appellants in No. 310.   Of counsel was *Theodore S. Hope, Jr.*

*Together with No. 322, *Chicago, Burlington & Quincy Railroad Co. et al.* v. *Boston & Maine Railroad et al.*, also on appeal from the same Court.

*S. R. Brittingham, Jr., F. E. Baukhages, Hewitt Biaett, R. R. Bongartz, S. G. Boxley, R. D. Brooks, G. L. Buland, Martin L. Cassell, M. L. Countryman, Jr., E. S. Davis, Rowland L. Davis, Tom M. Davis, J. P. Fishwick, E. D. Grinnell, Jr., W. L. Grubbs, W. R. McDowell, R. K. Merrill, M. A. Meyer, Jr., Leo H. Pou, W. C. Purnell, J. F. Reilly, A. C. Scott, M. C. Smith, Frank Vesper, Toll R. Ware* and *E. J. Zoll, Jr.* for appellants in No. 322, and the Chicago, Burlington & Quincy Railroad Co. et al., appellees in No. 310.

*Solicitor General Rankin, Assistant Attorney General Hansen, Robert W. Ginnane* and *I. K. Hay* for the United States and the Interstate Commerce Commission, appellees.

PER CURIAM.

These cases concern the range of the Interstate Commerce Commission's power over rates for car hire in railroading. Because they predominantly originate freight, long-haul trunk-line railroads own most of the freight cars in the industry. Short-haul terminal railroads, on the other hand, mainly terminate freight; to avoid needless duplication, they hire the cars of the long-haul roads rather than replace them with their own. The compensation to be paid for use of another's cars has, for the most part, been fixed by the railroads themselves, originally in terms of the mileage which borrowed cars traveled over the using road, later in the form of a flat *per diem* rate. Since September 1, 1947, the amount of the *per diem* has been adjusted in accordance with an agreement prepared by the Association of American Railroads (AAR). Prior to this litigation, the rates so established were followed by railroads generally, signers and nonsigners of the agreement alike.

In March 1951 the New York, Susquehanna & Western Railroad announced that it would no longer comply with

the then applicable *per diem*. Other terminal roads soon followed suit. In response, nineteen Class I long-haul roads filed a complaint with the Commission against five short-haul roads of the same Class and six short-line roads in Classes II and III. Additional roads intervening on one side or the other brought the total number involved to just over one hundred.

The complainants specifically declined to invoke the Commission's recognized rule-making power over car-hire rates conferred by § 1 (14)(a) of the Interstate Commerce Act, 40 Stat. 101, as amended, 41 Stat. 476, 49 U. S. C. § 1 (14)(a). Instead, they asked the Commission to declare that the various *per diems* in effect since November 1, 1949, were just and reasonable and that the public interest required uniform observance of those rates by all members of the industry. Relying on the power to issue declaratory orders granted by § 5 (d) of the Administrative Procedure Act, 60 Stat. 240, 5 U. S. C. § 1004 (d), the Commission held each *per diem* not in excess of reasonable compensation. Accordingly, it entered an order discontinuing the proceeding.

The terminal roads then brought an action before a statutory three-judge District Court to have this order set aside. As the court below noted, the effect of the Commission's action was "to require the respondent [terminal] carriers, and, indeed, as a practical matter all others, to pay the charges for car-use found to be reasonably compensatory . . . ." 162 F. Supp. 289, 292–293, n. 4. The terminal roads contended that determination of a uniform rate to be applied throughout the industry was beyond the Commission's adjudicatory jurisdiction and lay exclusively within its § 1 (14)(a) rule-making power.

This contention, which forms the basis of the appeal in No. 310, was rejected by the District Court, one judge dissenting. Nonetheless, that court set aside the Com-

mission's order on the merits. It pointed out that the Commission had erred in considering the repairs, depreciation and "car day divisor" components of the *per diem*. But it rested decision on the Commission's summary rejection of an alternative method of compensation, which would introduce a mileage factor into the *per diem*, advocated by certain of the terminal roads. In the Commission's view, that plan like the other "suggested plans for varying per diem charges could not be put into effect without an extensive investigation either by this Commission or by the A. A. R. The facts and arguments here presented are not persuasive that plans of this kind are desirable." 297 I. C. C. 291, 296. The District Court, on the other hand, thought the mileage factor approach had much to recommend it on its face and ruled:

> "In advance of a more thorough study we do not see the basis for the Commission's broad conclusion that the plan is both impractical and undesirable. To perform our function in the face of the persuasive evidence that the plan is both desirable and feasible we must have at least some inkling of the basis for the Commission's general conclusions to the contrary. In short we think the Commission erred in brushing aside a matter of such importance to so many vital links in our transportation system with little more than a casual wave of the hand." 162 F. Supp., at 298.

In its memorandum before this Court, the Commission has expressed its readiness to "proceed in accordance with the terms of the remand." As a result, we find the question raised by No. 310—whether the Commission has adjudicatory jurisdiction to determine a rate of uniform application throughout the industry or must engage in what the District Court characterized as the "full scale investigation" accompanying promulgation of a rule

under § 1 (14) (a)—prematurely presented for decision. The Commission here recognizes that "further investigation" and "more detailed findings" will be requisite to compliance with the District Court's remand. Should such proceedings lead the Commission to reconsider its estimate of the desirability of a *per diem* embracing a mileage factor, the result might well be not a declaration that the present *per diem* is just and reasonable but the establishment of a new rate. If, conversely, the Commission adheres to its original view, it will be in the light of new findings derived from its further investigation. In either event, the proceedings on remand may lose the characteristics of a § 5 (d) declaration and take on those of a § 1 (14) (a) rule-making procedure, thereby causing the question now sought to be reviewed to disappear. As the Commission has appropriately observed, the record now presents what is essentially only "an interim ruling."

These considerations lead us to dismiss the appeal in No. 310 without prejudice to raising the "adjudicatory" issue again, if it survives the further Commission proceedings. This also disposes of No. 322, which is a cross appeal by the long-haul roads challenging the scope of the District Court's review.

*It is so ordered.*