**BOSTON AND MAINE RAILROAD, Plaintiff,**

v.

**LEHIGH AND NEW ENGLAND RAILROAD COMPANY, Defendant.**

**NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Plaintiff,**

v.

**LEHIGH AND NEW ENGLAND RAILROAD COMPANY, Defendant.**

United States District Court
S. D. New York.
June 23, 1960.

claimants are residents of the Eastern District of Louisiana.)

61. 28 U.S.C. § 1397.

62. 28 U.S.C. § 2361.

William T. Griffin and Herbert Burstein, New York City, for plaintiff New York, N. H. & H. R. Co.

William T. Griffin, Herbert Burstein, New York City, Carl E. Newton, New York City, of counsel, for plaintiff Boston & Maine R. Co.

Clark, Carr & Ellis, Covington Hardee, Donald L. Wallace, New York City, Harold B. Bornemann, Philadelphia, Pa., of counsel, for defendant.

MacMAHON, District Judge.

Plaintiffs in these companion cases move for summary judgment against defendant under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. or for alternative relief described later. Defendant cross-moves for leave to serve amended answers and for a stay of further proceedings pending the completion of pre-trial hearings in other litigation now pending in this court. All of the parties are railroad carriers subject to the Interstate Commerce Act, 49 U.S. C.A. § 1 et seq., but jurisdiction is based on diversity of citizenship.

The question presented is whether the plaintiffs are entitled to summary judgments for liquidated net balances of interline freight revenues claimed by them, notwithstanding defendant's denials, counterclaims and set-offs based upon disputed and unliquidated claims for per diem car hire which are the subject of a controversy now pending before the Interstate Commerce Commission.

Plaintiffs seek to recover a sum of money only upon an account stated for

interline freight balances, in the amount of $235,841.03 in the case of The New York, New Haven and Hartford, and $39,814.76 in the case of Boston and Maine. The case grows out of a controversy between the parties respecting adjustment of interline accounts resulting from the movement of freight in interstate commerce.

Interstate transportation of freight usually requires that through shipments be hauled over more than one railroad line before the freight can be delivered to the ultimate consignee. This interline operation is conducted under the jurisdiction of the Interstate Commerce Commission. 49 U.S.C.A. §§ 1(2) and 15(3) (6). Depending upon the shipper's method of payment, either the first or the last carrier will receive payment for the entire haul although the collecting carrier is entitled to only a portion of the revenue received. The division of the interline revenue among the participating carriers is established by voluntary agreements or tariffs on file with the Commission. The net amount due each carrier for interline revenue is computed at the end of each month by giving effect to mutual debits and credits, striking a net balance, and settling the account in accordance with the rules of the Association of American Railroads (AAR). The adjustment of the interline account thus created is commonly referred to as "interline freight balances".

Plaintiffs and defendant are members of the AAR and have settled their interline freight balances for many years on the basis of procedures prescribed under its rules. Thus, each month, in accordance with Rule 149 [1], a sight draft was presented by each of the plaintiffs to the defendant for net balances representing such plaintiff's share of the interline freight revenue for the preceding month, and the sight draft was accepted and paid by the defendant. There came a time set forth in the complaints, however, when the defendant refused to honor the sight drafts. The defendant's refusal to pay such interline freight balances forms the basis of plaintiffs' claims.

Although defendant neither disclaimed liability, nor disputed the accuracy of the account rendered, it refused to honor the plaintiffs' sight drafts because it asserted that each of the plaintiffs was indebted to it on another mutual account for per diem car rentals which it set off over plaintiffs' protests against the net balances claimed for interline freight.

■ Efficient handling of freight and economic use of equipment require that carriers use freight cars belonging to other railroads to avoid needless loading and unloading and to minimize wasteful hauling of empty cars. See Chicago, R. I. & P. Ry. v. United States, 1931, 284 U.S. 80, 90 et seq., 52 S.Ct. 87, 76 L.Ed. 177; St. Louis Southwestern Ry. v. State of Arkansas, 1910, 217 U.S. 136, 30 S.Ct. 476, 54 L.Ed. 698. This use of cars belonging to another railroad on the line of non-owners results in an obligation on the part of the user to compensate the owner railroad for the use of its equipment. See Louisville & Nashville R. R. v. Central Stock Yards Co., 1909, 212 U.S. 132, 29 S.Ct. 246, 53 L.Ed. 441. Since the turn of the century, the basis for compensation has been a flat sum per day called "car hire per diem" or "per diem balances".[2]

---

1. Rule 149 provides:

"Settlement of Interline Balances

The settling carrier shall pay to each intermediate carrier its proportion of the interline freight revenue, whether the freight charges are prepaid or collect, advances and prepaid to be included in the settlement with the waybilling carrier. Settlements shall be made on net balances which shall be immediately subject to sight draft, except where special ar- rangements are made between interested carriers."

2. Before 1902, the prevailing and customary basis was mileage, but this proved unsatisfactory because the car owner had no means of verifying mileage on foreign lines, and there was no incentive for the prompt return of cars. See Chicago, R. I. & P. Ry. v. United States, supra.

Long haul trunk-line railroads, like the defendant, originate more traffic than they terminate and, therefore, own most of the freight cars in the country. Conversely, short haul terminal lines, like the plaintiffs, terminate more traffic than they originate and, consequently, hire cars owned by the long haul roads.

Prior to 1946 the per diem charges for a non-owner's use of freight cars were fixed by a car service and per diem agreement among the carriers acting through the AAR, and there was no dispute as to the reasonableness of the rates.

Commencing in 1947, however, per diem charges were progressively increased, resulting first in modification agreements and ultimately in litigation regarding the reasonableness of the rates. Litigation on that issue is presently pending before the Interstate Commerce Commission.[3] It is such disputed and unliquidated per diem balances which form the basis of certain denials, affirmative defenses, set-offs and counterclaims alleged in the defendant's proposed amended answers.

■ Plaintiffs are met at the threshold of their motions for summary judgment with the classic assertion that the facts are in dispute and that "a litigant has a right to a trial where there is the slightest doubt as to the facts". Doehler Metal Furniture Co. v. United States, 2 Cir., 1945, 149 F.2d 130, 135. I find such doubt here.

■ The initial and basic question involved is whether there is an account stated between the parties on interline freight balances alone. The very meaning of an account stated is that the parties have come together and agreed upon a sum certain as the balance of indebtedness due upon past transactions between them. Acquiescence in the stated sum plus lapse of a reasonable time usually gives rise to an implied promise of payment upon which an action may be founded. The debtor and creditor, however, must mutually agree as to the allowance or disallowance of their respective claims and as to the balance struck upon the final adjustment of the accounts and demands on both sides. There must be a manifested mutual assent to a stated sum as the amount due. Assent need not be direct or express but may be implied from circumstances. Daube v. United States, 1933, 289 U.S. 367, 370, 53 S.Ct. 597, 77 L.Ed. 1261; Newburger-Morris Co. v. Talcott, 1916, 219 N.Y. 505, 512, 114 N.E. 846, 3 A.L.R. 287; Eames Vacuum Brake Co. v. Prosser, 1898, 157 N.Y. 289, 300, 51 N.E. 986; Volkening v. DeGraaf, 1880, 81 N.Y. 268, 271. In the words of the Restatement of Contracts, § 422(1):

"Matured debts are discharged by a manifestation of assent in good faith by debtor and creditor to a stated sum as an accurate computation of the amount of the matured debt or debts due the creditor, or if there are cross demands as the

3. In 1951 some of the short haul roads refused to pay the charge agreed upon by most of the railroads, and in 1953 several long haul roads filed a complaint with the Interstate Commerce Commission requesting a declaratory order under § 5(d) of the Administrative Procedure Act, 5 U.S.C.A. § 1004(d), declaring that the per diem charge was just and reasonable. The Commission accepted the contentions of the long haul lines. Chicago, B. & Q. R. R. v. New York, S. & W. R. R., 297 I.C.C. 291 (1955).

The plaintiffs in this case instituted suit in the United States District Court for Massachusetts to vacate the order of the Commission principally on the ground that the Commission lacked jurisdiction over past per diem charges. The court sustained the jurisdiction of the Commission but annulled the order on the ground that the Commission had failed to consider certain relevant factors. Boston & Maine R. R. v. United States, D.C.D.Mass.1958, 162 F.Supp. 289. Both groups of lines appealed to the Supreme Court which dismissed the appeal as premature primarily on the ground that the Commission had expressed its readiness to proceed in accordance with the terms of the District Court's remand. Boston & Maine R. R. v. United States, 1958, 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34. Proceedings are now pending before the Interstate Commerce Commission.

*amount of the difference between the total indebtedness due one party and the total indebtedness due the other party. * * * "* [Italics supplied.]

■ This is not to say, however, that an account rendered may not become an account stated merely because it does not cover all of the dealings or all of the claims existing between the parties concerned. Indeed, the prevailing view is that there may be an account stated notwithstanding that one of the parties has a set-off or counterclaim which is not considered or included in the account. Pierce v. Delamater, N.Y.1847, How. App.Cas. 1, 3 How.Pr. 162. See, also, Annotation, 175 A.L.R. 248 (1948); 1 C.J.S. Account Stated § 26 (1936).

■ Under these familiar principles, this case presents a basic issue of fact as to whether these parties ever manifested a mutual assent to a stated balance due and owing to plaintiffs as to interline freight balances *alone* notwithstanding defendant's cross-claims for car hire per diem. In large measure, this depends on the manifested intention of the parties as it may be gleaned from their conduct and relevant circumstances surrounding their treatment of the accounts, including the separate or related nature of the underlying transactions. Daube v. United States, supra; Newburger-Morris Co. v. Talcott, supra. These relevant circumstances are not shown in the papers before the court, and there are simply too many gaps in the proof to reach any definitive conclusion on the question of the parties' intention to strike a balance as to the interline freight account alone.

In view of this basic bar to a summary judgment, it becomes unnecessary to consider at this time the questions of whether there has been an accord and satisfaction in the case of The New York, New Haven and Hartford, or whether the defendant is barred by a new contract [4] from asserting its set-offs and counterclaims prior to the final determination of the proceedings now pending before the Interstate Commerce Commission. These questions are inextricably intertwined with the issue of fact regarding the alleged account stated.

The alternative motions to strike certain defenses as sham, to strike and to dismiss the counterclaims, to stay further proceedings on the counterclaims, or to sever the claims from the counterclaims and grant summary judgment on the plaintiffs' claims are all dependent on the same basic issue of fact as well as a full exposition of the underlying transactions. Similarly, definitive resolution of the questions of whether this court is without jurisdiction, primary or otherwise, over the alleged set-offs and counterclaims under the doctrine of exhaustion of administrative remedies, and whether the counterclaims should be stayed, must await development of the facts. Such drastic surgery as striking defenses and counterclaims upon speaking motions addressed to their sufficiency would be premature at this stage of the case and tantamount to a summary judgment dismissing the cross-claims of the defendant. Rule 12(c), Federal Rules of Civil Procedure.

■ A motion for summary judgment is addressed to the discretion of the court. Rockefeller Center Luncheon Club v. Johnson, D.C.S.D.N.Y.1953, 116 F.Supp. 437; 6 Moore, Federal Practice ¶ 56.15(6) at 2155 (2d Ed.1953).

The voluminous pleadings, affidavits, exhibits and memoranda; the extensive arguments of counsel; the technical nature of the subject matter [5]; the im-

4. The defendant and The New York, New Haven and Hartford signed a written contract under which each agreed to forego suit, waive the statute of limitations, and settle per diem balances in accordance with the final determination of the litigation now pending before the Interstate Commerce Commission. It is not clear, however, from the meager facts before the court whether this contract is still in force.

5. E. g., Chicago & E. I. R. R. v. Southern Ry., 7 Cir., 1959, 261 F.2d 394.

portance of the issues to the railroad industry; the quantity of the factual material to be analyzed, and the many complex questions of law involved are impelling reasons for denying summary relief. The issues are now obscured by argumentative statements and counter-assertions and the conflicting inferences and conclusions which the parties contend are to be drawn from an incomplete record of the transactions and course of dealing involved.

All of these matters pose complex questions of fact and law. Their cumulative weight is too heavy a burden for so frail a vehicle as a motion for summary judgment.

Under all the circumstances, I am convinced that sound judicial administration dictates that the court withhold judgment on the involved questions of law present here until the whole structure stands on a solid foundation established either by stipulation, pre-trial, or a trial where the proof can be more deeply developed, the ultimate facts definitively found, and the issues put into clear focus. Cf., United States v. Bethlehem Steel Corp., D.C.S.D.N.Y. 1958, 157 F.Supp. 877. As the Supreme Court put it in Kennedy v. Silas Mason Co., 1948, 334 U.S. 249, 256–257, 68 S.Ct. 1031, 1034, 92 L.Ed. 1347:

"* * * summary procedures, however salutary where issues are clear-cut and simple, present a treacherous record for deciding issues of far-flung import, on which this Court should draw inferences with caution from complicated causes of legislation, contracting and practice.

"We consider it the part of good judicial administration to withhold decision of the ultimate questions involved in this case until this or another record shall present a more solid basis of findings based on litigation or on a comprehensive statement of agreed facts. * * *"

Accordingly, the motions for summary judgment are denied. The alternative motions to strike certain paragraphs of defendant's answers as sham; to strike the counterclaims; to stay proceedings on the counterclaims, and to sever the claims from the counterclaims are likewise denied without prejudice to renewal and whatever ruling the court may deem appropriate upon facts established by stipulation, pre-trial or trial. The cross-motion by defendant for leave to serve amended answers is granted, but the cross-motion for a stay is denied. Settle order on notice.