**BOSTON AND MAINE CORPORATION, Plaintiff,**

v.

**CHICAGO, BURLINGTON AND QUINCY RAILROAD, Defendant.**

No. 65 Civ. 3711.

United States District Court
S. D. New York.

Oct. 4, 1966.

Donovan, Leisure, Newton & Irvine, New York City, for plaintiff; M. Lauck Walton, Craig B. Ward, New York City, of counsel.

Clark, Carr & Ellis, New York City, for defendant; Donald L. Wallace, Timothy C. Quinn, Jr., New York City, of counsel.

WYATT, District Judge.

This is a motion by plaintiff Boston and Maine Corporation ("B&M") for summary judgment on the first claim in its complaint (Fed.R.Civ.P. 56), and for an order striking as insufficient and immaterial all of the complete and partial defenses of defendant Chicago, Burlington and Quincy Railroad ("Burlington"). Fed.R.Civ.P. 12(f).

In an order with opinion being filed herewith, leave is being granted to Burlington to serve an amended (partly supplemental) answer and counterclaims. Accordingly, the present motion to strike defenses will be considered with respect to the amended answer and counterclaims, already on file.

This action was commenced by plaintiff B&M in the New York State Supreme Court, New York County, by service of summons and complaint on November 19, 1965. Upon petition filed by defendant on December 6, 1965 the action was removed to this Court by reason of diversity of citizenship. 28 U.S.C. §§ 1332, 1441. The answer was filed on February 21, 1966.

The Motion for Summary Judgment

The first claim in the complaint, upon which summary judgment is sought, prays for judgment enforcing an arbitration award which awarded to B&M $172,498.73 plus undetermined amounts accruing after December 1964 (the award also placed upon Burlington the burden of the arbitration fee). The award was for certain "interline freight balances", to be hereafter explained, found to be due from Burlington to B&M. The first claim also prays for an order enjoining defendant from "off-setting future car hire claims against freight earnings collected on behalf of plaintiff".

The facts surrounding the award sought to be enforced do not appear to be in dispute and are as follows:

B&M and Burlington are both railroad common carriers. Both are members of the Accounting Division (the "Division") of the Association of American Railroads (the "Association"). The Division has had in effect various "mandatory" and "recommendatory" accounting rules which for present purposes amount as to "mandatory" rules to an agreement binding on all members, including these two parties here. The Division publishes its rules in book form. The book to which the Court is referred is "Railway Accounting Rules", effective September 1, 1965 ("RAR"), to which page reference will be hereafter made; none of the rules were significantly different for relevant periods prior to September 1, 1965.

Article III of the Division's Rules of Order (RAR, p. 397) provides, among other things, for the promulgation of rules relating to interline freight and

passenger accounting and interroad disbursement accounts, "which shall be mandatory and binding upon carriers operating in North America who are members of the Division". As noted, both B&M and Burlington are such carrier members.

Article X, § 2(h) (RAR, p. 400) of the Division's Rules of Order provides for six Accounting Rules Arbitration and Appeal Committees, consisting of three members each.

The Division has promulgated Mandatory Arbitration Rules (RAR, pp. 377 and following), binding upon both B&M and Burlington.

Mandatory Arbitration Rule 1 (RAR, p. 377) provides:

"Procedure in Respect to Application of Rules and in Cases of Disagreements

When any member of this Division disagrees with another member as to the application of a mandatory rule, he may submit his case to the Secretary for presentation to the appropriate Arbitration Committee for a decision. The decision of the majority of that Committee shall be binding on the parties involved, except that they shall have the right of appeal to the Appeal Committee on matters involving freight and overcharge rules, as provided by Rule 33."

The present dispute, as noted, concerns primarily interline freight balances. These arise when a freight shipment is carried by a number of railroads. Specifically in the case at bar, Burlington as the originating or waybilling carrier, would collect from shippers amounts of freight revenue part of which would be due to intermediate carriers and to B&M as destination carrier. In other words, several lines would participate in the movement of freight, with Burlington being the first such line and B&M the last. Burlington would collect the entire amount of revenue due for the shipment from start to finish, thereby obligating itself to divide the revenue among the other lines as per their proportionate share of the carriage. There is no dispute as to the amount due by Burlington to B&M as interline freight balances. As will be seen, the dispute is as to whether Burlington can properly set off against the interline freight balances due B&M amounts claimed by Burlington to be due it from B&M on separate transactions, namely, use by B&M of freight cars owned by Burlington.

This separate dispute over car hire charges comes about because from time to time and as required by Act of Congress (49 U.S.C. § 1(4), (5) and (11)) as well as by industry practice, B&M has used for its own purpose freight cars owned by Burlington. The charge for this car hire is known as a "per diem" charge. For over thirteen years there has been a dispute between B&M and Burlington, along with many other railroad companies, as to what is a reasonable per diem charge. Basically, B&M puts the maximum reasonable per diem charge at a much lower amount than does Burlington. Thus, the *amount* of the per diem charges is in dispute between the parties, whereas the amount of interline freight balances due to B&M is not in dispute.

Attempts by Burlington and others to collect per diem charges have involved actions in this Court and proceedings before the Interstate Commerce Commission ("ICC").

The proceedings before the ICC came first. The details are of no moment here. An interesting description of the controversy is contained in Boston & Maine R. R. v. United States, 162 F. Supp. 289 (D.Mass.), appeal dismissed 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34 (1958); see also 297 I.C.C. 291.

While the proceedings were pending before the ICC, Burlington sued B&M for the per diem charges in this Court. The action was considered by Judge Ryan along with many similar actions. See Baltimore & O. R. Co. v. New York, N. H. & H. R. Co., 196 F.Supp. 724 (July 9, 1961). In substance, Judge Ryan held

that the actions could be maintained but stayed them until the *amount* of the car hire charges could be determined by the ICC.

Unable to collect promptly in the ICC proceedings or in its action in this Court what it thought was due as per diem charges, Burlington after a period of time turned to self-help.

On or about November 1, 1963, Burlington began to withhold part or all of the interline freight balances due to B&M as its proportionate share. The stated reason for so doing was that these revenues were being set off against what Burlington claimed was owed to it by B&M as reasonable per diem charges for the use by B&M of cars belonging to Burlington.

As already noted, B&M and Burlington are both members of the Association. One of the freight mandatory rules (No. 149; RAR, p. 57) covers the settlement of interline freight balances. There is a mandatory arbitration rule (No. 1; RAR, p. 377) which provides that if there is a disagreement between members "as to the application of a mandatory rule" a member may submit his case "to the Secretary for presentation to the appropriate Arbitration Committee for a decision" which decision "shall be binding on the parties involved".

B&M invoked the arbitration procedure of the Division to recover the interline freight balances which Burlington was withholding under claim of set off.

On March 2, 1965 B&M wrote to Burlington and enclosed its statement of the arbitration claim which it planned to submit. See Mandatory Arbitration Rule 12A (RAR, p. 379). The statement referred to Rule 149 as to settlement of interline freight balances, showed that Burlington had refused to pay $172,-498.73 through December 31, 1964 on the ground that it was "to be applied to per diem balance due" Burlington, and asserted that such refusal was a violation of Rule 149.

Burlington returned the arbitration statement to B&M with its defense, in accordance with the rules. The defense of Burlington was that

"Freight balances due Boston and Maine are being withheld to protect the amounts due us for standard per diem which B&M has refused to pay."

The matter was then submitted to the arbitrators who on June 21, 1965, rendered their decision unanimously in favor of B&M.

The arbitrators considered, among other things, the contention of B&M that it, as the "settling carrier", had to pay (under Rule 149) to each intermediate carrier "its proportion of freight revenue, whether charges are collect or prepaid" (June 21, 1965 opinion of Chairman, Arbitration Committee, para. 5, page 2). As I understand it, this means that where Burlington collects prepaid freight as the originating carrier, and then withholds payment from B&M, the latter must pay to intermediate carriers and be out of pocket.

The arbitrators considered, in accord with the defense of Burlington, whether Burlington violated freight mandatory rule 149 "when they declined" to pay interline freight balances "for reason of disputed per diem rates". The arbitrators unanimously found such a set off by Burlington was improper under settlement rule 149 because there is "no rule in the AAR Railway Accounting Rules that allows any offsets other than the usual corrections developed in the settling of interline waybills".

The decision therefore was that Burlington "shall settle with the Boston & Maine Railroad in the amount of $172,-498.73 plus amounts withheld subsequent to December 1964 under the same Rule violation".

■■ No appeal from the award, as provided for in a Mandatory Arbitration Rule (No. 33; RAR, p. 384), was taken by Burlington. The award is therefore final. The agreement to arbitrate did not provide for enforcement of the award by any statutory method. Therefore, according to the law of New York, it may be enforced by an action for a

judgment. Sandford Laundry v. Simon, 285 N.Y. 488, 492, 494, 35 N.E.2d 182 (1941).

The several contentions of Burlington have been considered. All are without merit.

■ The parties were bound to arbitrate. They did arbitrate. An award was made. There is no reason why it should not be enforced. There is no genuine issue as to any material fact and B&M is entitled to judgment on its first claim as a matter of law.

There is no just reason for delay and thus an express direction is given that there be judgment for B&M on its first claim. Fed.R.Civ.P. 54(b).

Plaintiff B&M has also moved to dismiss all the complete and partial defenses of Burlington which are here considered as set forth in the "amended answer and counterclaims" permitted to be served. This motion must be granted.

■ Since summary judgment on the first claim in the complaint is granted, thereby enforcing the arbitration award, any defenses directed solely against the first claim must be struck as immaterial to the remaining two claims in the complaint. Fed.R.Civ.P. 12(f). Accordingly, the following defenses are struck: the first complete affirmative defense (paras. XVIII–XXIII); the second complete affirmative defense (paras. XXIV–XXVIII); the first partial defense (paras. XXIX–XXXV, as amended); and the tenth complete affirmative defense (para. LII).

As to all other defenses which plaintiff has moved to strike, the motion must be granted because those defenses are insufficient as alleged against any of the three claims in the complaint. Fed.R. Civ.P. 12(f).

■ The third complete affirmative defense (para. XXXVI, as amended) is insufficient because in no way could B&M's refusal of the drafts constitute any "acquiescence" of defendant's course of conduct or "an accord and satisfaction of all claims" between B&M and Burlington. Indeed, B&M was instituting and prosecuting arbitration and court proceedings protesting the actions of Burlington during the period when it was allegedly performing the acts of "acquiescence".

The fourth complete affirmative defense (paras. XXXVII–XLVI) is apparently directed against the second claim of B&M. It is insufficient because the "course of conduct" of B&M alleged in that defense could in no way "estop" B&M from proceeding against Burlington for interline freight balances due it which were being withheld in breach of a contract between the parties. Indeed, the correspondence set out in that defense shows on its face that there was no acquiescence by B&M.

■ The seventh and eighth complete affirmative defenses (paras. XLIX and L) are insufficient because actions which are "pending and undisposed of" between B&M and other railroads can have no legal effect as a defense to the present action against Burlington. There is no motion before the Court to consolidate this action with the others, nor is there a motion to stay this proceeding pending the outcome of the others. In one of the other cases, Boston and Maine Railroad v. Lehigh and New England Railroad Co., 188 F.Supp. 486 (S.D. N.Y.1960), appeals dismissed, 287 F.2d 678 (2d Cir. 1961), it may be noted that Judge MacMahon denied a motion by plaintiff for summary judgment. This is not any precedent for denial of summary judgment in the case at bar because the action before Judge MacMahon did not involve enforcement of an arbitration award.

The ninth complete affirmative defense (para. LI) is insufficient because "plaintiff's claim set forth in the complaint" has in no way "been previously adjudicated and determined" by the action of the ICC in denying B&M's petition to reopen the Ahnapee proceeding.

The motion is disposed of as indicated.

Settle judgment and order on notice.