BOSTON AND MAINE RAILROAD
et al., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

BOSTON AND MAINE CORPORATION,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

Civ. A. Nos. 56–1004–G, 68–79–G.

United States District Court
D. Massachusetts.

March 18, 1969.

John J. Nee, Roslindale, Mass., and William Crooks, Jr., Marblehead, Mass., for B & M Corp.

Edmund M. Sweeney, Boston, Mass., for New York, New Haven & Hartford R.R.

David G. Scannell and M. Lauck, Walton, Donovan, Leisure, Newton & Irvine, New York City, for B & M and N. Y., New Haven & Hartford.

Richard J. Ferriter, Boston, Mass., and John C. Danielson, Chicago, Ill., for Chicago & North Western R. Co. et al.

Andrew Lane and John O. Parker, Boston, Mass., for Southern R. Co., and Chicago, Milwaukee, St. Paul and Pacific R. Co.

Jerome Shapiro and John Colgren, New York City, Richard R. Bongartz, Philadelphia, Pa., for Penn Cent. R. Co.

John E. O'Keefe, Boston, Mass., Richard H. Stokes, Jamaica, N. Y., for Long Island R. Co. and others.

MacDonald & McInerny, Washington, D. C., for Southern R. Co., etc.

Paul F. Markham, U. S. Atty., Edward F. Harrington, Asst. U. S. Atty., Boston, Mass., for United States.

Jerome Nelson, Washington, D. C., Ramsey Clark, Atty. Gen., Dept. of Justice, Washington, D. C., for defendant, ICC.

Stephen Hopkins, Neal Holland, Sherburne, Powers & Needham, Boston, Mass., Sidley & Austin, Martin M. Lucente, Chicago, Ill., for Atchison, Topeka & Santa Fe and others.

## OPINION OF THE COURT.

Before WOODBURY,[*] Senior Circuit Judge, and WYZANSKI and GARRITY, District Judges.

WOODBURY, Senior Circuit Judge.

This is another chapter in protracted litigation, primarily between long-haul freight originating railroads and short-haul freight terminating railroads, over the price one railroad should pay for the use on its line of another railroad's freight cars. In a previous chapter this court held, one judge dissenting, that the Interstate Commerce Commission had jurisdiction to enter an order at the behest of the long-haul roads that the rates for freight car use fixed by the Association of American Railroads (AAR) were just, reasonable and otherwise lawful and must be observed. Boston & Marine Railroad v. United States, 162 F.Supp. 289 (U.S.D.C., Mass.1958). But the court remanded, directing the Commission to give further and more detailed consideration to the propriety of basing the rate, at least in part, on the dis-

[*] Sitting by designation.

tance a foreign car traveled on a using railroad's line instead of solely upon the time the car was on the user's line as had been the practice since about the turn of the century.[1] The Supreme Court, on representations of the Commission that it would follow the mandate of this court and undertake a study in depth of the problem under the power conferred upon it by § 1(14) (a) of the Interstate Commerce Act,[2] dismissed cross appeals as prematurely presenting the question of the Commission's jurisdiction to issue a declaratory order in the premises. Boston & Maine Railroad v. United States, 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34 (1958).

■ Pursuant to its memorandum to the Supreme Court, the Commission reopened the case remanded to it and, consolidating with it two other cases pending before it under § 1(14) (a), embarked upon a thorough, full-scale study of the problem. In January 1968 the Commission handed down a decision and order in the consolidated cases in which it concluded upon consideration of the voluminous record that the past calculations of the AAR were based upon statistics and apportionments of such limited probative value as to render them unsatisfactory as a measure of past *per diem* costs. In consequence it found that the complainants in the original case asking for a declaratory order that the AAR rates were just, reasonable and otherwise lawful, that is, the long-haul railroads, had failed to sustain their burden of proving that the rates in issue were indeed just, reasonable and non-discriminatory for use in determining *per diem* charges with respect to the defendants, the short-haul railroads. In the other cases before it the Commission in the exercise of its powers under § 1(14) (a), *supra*, fixed separate rates

for freight car use for each year from 1953 to 1965, inclusive, and provided that car use rates thereafter should be calculated in accordance with a rate table which itemized and valued each factor included in calculating the rate. The Commission's study convinced it that a line-haul mileage factor should be included in the rate for car use and provided that future rates should be separately calculated, assessed and paid not only with respect to the number of days cars are held on line but also with respect to the number of miles moved by users in line-haul service.[3] Consequently the Commission required railroads to keep records of line-haul use as well as records of days cars are on a user's line. The Commission did not base past *per diem* rates in any part upon mileage because it said no records existed upon which to determine the actual mileages of foreign *per diem* cars during past periods, or even to make any reliable estimate of the mileages of such cars.

The consolidated actions before us are to enjoin, set aside and annul the report and order of the Commission outlined above.

"In attempting to find a measure of the just apportionment of car-hire costs, the railroads and the Commission have had to face a condition of extraordinary complexity, and not a theory. The Fifth Amendment does not command the impossible. It does not demand that the power and duty of the Commission to make the apportionment be thwarted by requiring it to adopt a standard of unattainable exactness. The validity of what is of necessity a rule of thumb, best adapted to secure a just apportionment, can hardly depend upon a perfect precision in its application; its imperfections in this respect are themselves

---

1. The history of *per diem* as it is known, is outlined in the previous opinion of this court and cases therein cited. No purpose would be served by recapitulation here.

2. 40 Stat. 101 as amended, 41 Stat. 476, 49 U.S.C. § 1(14) (a).

3. It did not include mileage in switching service because it said it would be impractical for railroads to keep records of mileage in such service.

compensated by an advisedly sought simplicity and convenience of operation." Mr. Justice Stone, dissenting in Chicago R. I. & P. Railway Co. v. United States, 284 U.S. 80, 116, 52 S.Ct. 87, 99, 76 L.Ed. 177 (1931).

Viewing the cases before us in the light of the above observations, in which Justices Holmes and Brandeis concurred, and which we think eminently appropriate, we find no error in the Commission's actions.

Several medium and long-haul railroads as intervenors make common cause with the United States in supporting the Commission's action. Short-haul railroads, primarily the Boston and Maine and the Trustees of the New York, New Haven and Hartford, for convenience B & M and N H hereinafter, challenge the Commission's action on several grounds.

The challengers strenuously assert that the Commission by its action requires them to pay certain car repair items twice.

Under the rules of the AAR car owners are responsible for repairs attributable to ordinary wear and tear, and car users are responsible for car repairs made necessary by damage "due to unfair usage or improper protection by the using line." Obviously certain car repairs have to be made to foreign cars when on a user's line to make the cars safe and serviceable. Such repairs are made by the using line which charges the repairs to the car owner at rates fixed by the AAR for specific repairs. The complaining railroads contend that the rates fixed by the AAR are below cost which results in a car repair deficiency in the amount, they say, of about 98 million dollars per year. They assert that the Commission has included this figure in fixing the *per diem* whereby the railroads pay this deficiency twice, once when they repair the foreign car and again in the *per diem* rate for the use of the car.

The Commission did not overlook this assertion. It said: "Upon all evidence, it is found that the car repair deficiency to the extent that it actually exists, should be corrected by adjustment in the AAR billing rates, and that any attempt to compensate for the deficiency by a deduction from the car rental charge would be unreasonable." Moreover the Commission pointed out that the B & M and the N H railroads actually benefited from the low repair costs because, as freight terminating roads with a surplus of foreign cars available for their own loadings, they could, as they in fact did, exercise a good deal of selectivity in the choice of cars to repair and load, whereas the long-haul freight originating railroads with their demand for cars could not be as selective, so that as a result the B & M and N H profited substantially every year by having their cars repaired by other roads more cheaply than they could repair their cars themselves.

■ *Per diem* rates and car repair deficiency to the extent that it actually exists may be interrelated. But there is nothing in the statute or in any court decision we know of requiring the Commission to treat the two as inextricably linked. We think it well within the bounds of the Commission's discretion to treat the items separately, at least until the short-haul lines make some attempt to change AAR repair rates if they think change to their financial advantage.[4]

The Commission's decision that line-haul mileage is an essential element of just and reasonable compensation for the future does not mean, as the B & M and N H contend, that the Commission's determination that rates for the past should be based upon time on line alone is necessarily erroneous. A finding of unlawfulness of future rates does not by itself compel a similar conclusion as to past rates.

■ It is true that as to past years the long-haul freight originating and

---

4. The B & M's one attempt to change an AAR billing rate, that for replacing roller bearings, was successful.

largely "car owner" roads had the burden of proving that existing AAR rates were just and reasonable. And it is true that in this they failed, for the Commission has now held that those rates were not just and reasonable. But it does not follow that the predominantly freight car owner group is somehow obliged to produce line-haul mileage figures for the past from non-existent records. The law does not demand the impossible. It was within the Commission's discretionary power to fix past rates on a straight time basis, as they had been fixed for decades by the railroads themselves, rather than to add a line-haul use factor which could not be based upon data but could rest only upon surmise.

The B & M and the N H point out that the Commission did not find that the amounts they had chosen to pay for car use in the past were outside the zone of reasonableness and contend that in the absence of such finding they cannot be compelled to pay higher rates even though such higher rates are also within the zone of reasonableness. We disagree.

In fixing specific rates for past years the Commission was speaking directly to the United States District Court for the Southern District of New York and the Supreme Court of the State of New York for New York County. In each court claims by other railroads against B & M and N H for money due for use of freight cars had been partially settled by entry of judgment on the issue of liability against B & M or N H, but entry of final judgment had been deferred until the Commission determined pursuant to a reference the reasonable rate of compensation for the use of freight cars.[5]

In answering the references the Commission properly was not concerned with any possibly proper or reasonable zone or range of rates but only with a specific rate upon which awards for past use should be based. Furthermore by finding that specific rates would be "the just, fair, reasonable and non-discriminatory rates", the Commission indicated that any other rates would not meet that standard.

■ There was no error in the Commission's use of Account No. 53, Index of Freight Car Costs, as a guide for calculating loss of purchasing power by reason of inflation. Indeed it seems to us more appropriate to use freight car construction cost alone as the guide to rising car costs than general costs reflected in the Wholesale Price Index of the Bureau of Labor Statistics, which reflect price increases in general, as the B & M and N H urge.

■ We also reject the contention of the B & M and N H that the Commission erred in approving a system of car hire charges for the future based upon the assumption that repair cost and car utilization are the same for all cars regardless of age and value. Their argument is that older cars require more repair than newer ones and that the more modern cars are used in preference to older ones and therefore have a different utilization ratio which ought to be considered in fixing *per diem* rates.[6] We see no reversible error in the Commission's disposition of this contention as follows:

"It cannot be found on this record, however, that any measurable progression in repair costs exists in relation to either the age or depreciated value

5. The cases pending in the U.S. District Court are reported in Baltimore and Ohio Railroad Co. v. New York, New Haven and Hartford Railroad Co., 196 F.Supp. 724 (S.D.N.Y., 1961). The cases pending in the Supreme Court of New York for New York County are Boston and Maine Railroad v. Illinois Central Railroad, index No. 115/59, and New York,

New Haven and Hartford Railroad Company v. Illinois Central Railroad, index No. 70/63.

6. For explanation of car utilization ratio and "car day divisor" see the former opinion of this court. 162 F.Supp. 289, 296 (1958).

of the car. Nor can it be found that the difference, if any, between the average repair cost and the actual repair cost of new or old cars, is so great as to make unreasonable the results reached by use of the average. We would not be warranted in disapproving rates varying with car cost merely because of the asserted possible differences in utilization and repair costs. If future studies demonstrate that measurable and significant differences exist, they should be brought to the attention of the Commission."

■ It is not the function of this court to reevaluate the record or to substitute its judgment for that of the Commission. The adequacy of the evidence to support the contention of the B & M and N H is for the Commission. Anyway the door is not closed to the reception of further data.

■ The B & M and N H also complain of the Commission's use of average costs of all freight car owners instead of the specific costs of each separate owner and they say that if it was proper for the Commission to use average costs then the Commission should also have used averages in constructing a line-haul mileage charge for past years. We see no merit in either assertion of error.

Certainly separate cost figures for each freight car owning railroad would vastly complicate record keeping and the computation of car hire rates. Nor does it appear that averaging car owner costs would work any gross unfairness. Costs are not so dissimilar that use of an average figure would work any great injustice. Averaging foreign line-haul car mileage, however, is quite another matter. Studies conducted by the Commission of the year 1960 show that the average distances foreign *per diem* cars moved that year varied from an average daily mileage of 4.8 miles on the Long Island Rail Road to a daily average of 120.9 miles on the Union Pacific. On the basis of these figures for 1960 it seems obvious that an average figure for line-haul mileage would not be fair or

just. It is for the Commission to decide when to resort to averages and when not to. We see no abuse of discretion in the Commission's use of average freight car costs but not average line-haul mileage on foreign lines.

Other assertions of the Commission's error are either disposed of by what we have already said, or were abandoned on oral argument, or are too insubstantial to warrant discussion or even enumeration.

In conclusion it will suffice to say that in our view the Commission has dealt thoroughly with a highly complex problem and after full and painstaking study has come up with a rational and fair solution as simple and convenient as the intricacy of the problem permits.

Judgment will be entered dismissing the complaints.