### In the Matter of BOSTON AND MAINE CORPORATION, Debtor.

#### No. 70–250–M.

United States District Court, D. Massachusetts.

Aug. 31, 1978.

Charles W. Mulcahy, Jr., Mulcahy & Mulcahy, Boston, Mass., for trustees.

Paul B. Galvani, Ropes & Gray, Boston, Mass., for Maine Central Railroad Co.

John T. Collins, Neal Holland, Sherburne, Powers & Needham, Boston, Mass., for the Chesapeake and Ohio Railway Co., the Baltimore and Ohio Railroad Co., and the Western Maryland Railway Co.

William P. Quinn, Fell, Spalding, Goff & Rubin, Philadelphia, Pa., for Trailer Train Co.

W. Charles Hogg, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for the Committee of Interline Railroads.

Joseph H. B. Edwards, Paul J. Lambert, Diane M. Kottmyer, Bingham, Dana & Gould, Boston, Mass., for First Mortgage Indenture Trustees.

## MEMORANDUM

FRANK J. MURRAY, Senior District Judge.

Petitions have been filed by 38 railroads,[1] and by Trailer Train Co., seeking immediate payment of interline charges, called "per diem" charges,[2] for pre-reorganization interline car usage. Specifically, petitioners seek to have Debtor's trustees pay the difference between the per diem charges paid the petitioners by Boston and Maine Corporation (B & M) from August 1, 1953 to March 12, 1970, the date of the filing of the petition in reorganization, and the per diem charges which would have been remitted had B & M paid according to the rates set out in the 1968 Interstate Commerce Commission (ICC) decision. *See Chicago, B. & Q. R. Co. v. N. Y. Susquehanna & W. R. Co.,* 322 ICC 176 (1968). Petitioners argue that per diem charges are entitled to a special

---

1. Petitioning railroads are The Baltimore & Ohio R. Co., The Chesapeake & Ohio Ry. Co., Western Maryland Ry., Maine Central R. Co., and The Committee of Interline Railroads which represents 34 railroads.

2. Per diem charges are the amounts which one railroad pays for the use of another railroad's cars, *Boston & Maine Railroad et al. v. United States and Interstate Commerce Commission et al.,* 162 F.Supp. 289, 291 (D.Mass.1958). Originally, the system of interchanging freight cars between carriers was a voluntary practice among railroads, but in 1911 the ICC made the practice obligatory. *Missouri & I. Coal Co. v. Illinois C. R. Co.,* 22 Inters.Com.Rep. 39 (1911). The compensation rates (the per diem charge) for car usage, and the rules for settling the payments, were established by agreement among the members of the Association of American Railroads (AAR) and its predecessor organization, the American Railway Association. In 1930 ICC ordered that the method of reporting and settling per diem interline payments by railroads be "in accordance with the per diem rules" of AAR. *Rules for Car Hire Settlements,* 160 ICC 369, 444–45 (1930). The order was sustained by the Supreme Court. *Chicago, Rock Island and Pacific R. Co. v. United States,* 284 U.S. 80, 52 S.Ct. 87, 76 L.Ed. 177 (1931). However, the rate of per diem charges continued to be set by AAR. In 1953 AAR sought to increase the per diem rate, and several railroads, including B & M, refused to agree to the increase on the ground that it was unreasonable. In 1955 the ICC declared that the increased per diem rate was not unreasonable, *Chicago, B. & Q. R. Co. v. N. Y. S. & W. Ry. Co.* (Docket No. 31358), 297 ICC 291 (1955), but this decision was reversed on appeal and remanded. *Boston & Maine R. v. United States and I.C.C.,* 162 F.Supp. 289 (D.Mass.1958), *appeal dismissed,* 358 U.S. 68, 79 S.Ct. 107, 3 L.Ed.2d 34 (1958). While ICC upon remand was reconsidering the proper level of the per diem rates in Docket No. 31358, contract actions against B & M and other railroads were brought in the District Court for the Southern District of New York to recover the difference between the then existing AAR promulgated per diem rate and the amounts tendered by the defendant railroads. Although that court found the plaintiffs were entitled to relief, the judicial proceedings were suspended and no judgment entered "because entry of judgment . . . requires the resolution of issues which Congress has placed within the special competence of the [Interstate Commerce] Commission . . .". *B. & O. R. Co. v. N. Y., N. H. & H. R. Co.,* 196 F.Supp. 724, 749 (S.D.N.Y.1961). During ICC's reconsideration of the per diem rates in Docket No. 31358, there was pending before it a petition (Docket No. 34405) requesting ICC to promulgate future rules respecting per diem charges, including the per diem rates, and in 1968, following consideration of both dockets and the proceedings in the District Court for the Southern District of New York, ICC found and ruled (a) that the increased AAR rate, which B & M had refused to pay, had not been shown to be reasonable, (b) that just, fair and reasonable rates from 1953 to 1968 (the year of decision) were prescribed, but "are of significance only as an aid to the courts in settling the amount of damages in the pending lawsuits", and (c) that just, fair and reasonable rates are prescribed for the future, effective August 1, 1969. *Chicago, B. & Q. R. Co. v. N. Y., S. & W. R. Co.,* 332 ICC 176, 183 (1968). This decision was upheld. *Boston & Maine Railroad v. United States,* 297 F.Supp. 615 (D.Mass.1969) (three judge-court), *aff'd per curiam,* 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142 (1969). No further action has been taken in the contract cases against B & M in the District Court for the Southern District of New York.

priority over other unsecured claims against the Debtor, and rely on *Matter of Chicago, R. I. & P. R. Co.,* 537 F.2d 906 (7th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977), ("Rock Island"), in support of their claims. The basic position of Debtor's trustees is that petitioners' per diem claims are merely general unsecured debts and entitled only to the priority given other pre-reorganization unsecured claims; in support of that position they rely on *In re Penn Central Transportation Company,* 486 F.2d 519 (3rd Cir. 1973) ("Penn Central I") and *Matter of Penn Central Transportation Company,* 553 F.2d 12 (3rd Cir. 1977) ("Penn Central II").

The claims of the petitioners fall into three categories: (a) per diem charges for services performed before August 1, 1969, (b) per diem charges for services performed on and after August 1, 1969 and prior to March 12, 1970, and (c) per diem charges for services performed prior to March 12, 1970, but not reportable to Debtor until after March 12, 1970. The Debtor's trustees do not dispute the amounts of petitioners' claims at this stage of the reorganization proceedings; the sole issue is the priority of the claims.

I

It is not disputed by petitioners that unpaid pre-reorganization per diem charges constitute debts within the meaning of the Bankruptcy Act (the Act). 11 U.S.C. §§ 1(14), 205(b). Section 77(a) of the Act [11 U.S.C. § 205(a)] confers upon the reorganization court exclusive jurisdiction over the Debtor and its property, and grants all powers over that property traditionally exercised by bankruptcy courts. Under Section 77(c)(7) of the Act [11 U.S.C. § 205(c)(7)] the reorganization court is empowered to determine priorities of the claims of creditors, except those claims which are given special status in reorganization proceedings and specifically described in Section 77. *See* 11 U.S.C. § 205(n)

(claims of employees for personal injuries and claims of sureties on certain bonds); 11 U.S.C. § 205(c)(3) (claims under trustees' certificates); 11 U.S.C. § 205(b) (unsecured claims under the "six months rule"). It is also not disputed that neither the Bankruptcy Act nor the Interstate Commerce Act, 49 U.S.C. § 1 *et seq.,* specifically provides that per diem charges for pre-reorganization rail car usage must be given priority status over other claims against a railroad in reorganization. However, petitioners argue that per diem debts should be distinguished from other claims against Debtor and that payment of the pre-reorganization per diem claims cannot be deferred at the discretion of the trustees.

Petitioners contend that the pre-reorganization per diem charges incurred after August 1, 1969 were pursuant to an order of ICC, 332 ICC 176 (1968), *supra,* mandating the payment of per diem claims at specified per diem rates, and that therefore the duty of the trustees under section 77(c)(2)[3] of the Act to comply with ICC orders requires immediate payment of the charges by the trustees. They contend further that public policy considerations with respect to the national supply of railroad cars likewise require the court to accord "super-priority" status to all pre-reorganization per diem claims, whenever incurred.

The arguments of petitioners find support in the decision and language of the opinion in *Rock Island, supra,* where the petition for reorganization was filed March 17, 1975. The reorganization court there ordered that the per diem accounts, all incurred after August 1, 1969, could be deferred at the discretion of the trustees. The interline railroads with the support of ICC sought modification of the order to require immediate payment of the per diem accounts. The reorganization court denied the petition, and the Seventh Circuit Court of Appeals reversed, holding that the payment of both post- and pre-reorganization

---

**3.** Section 77(c)(2) [11 U.S.C. § 205(c)(2)] provides that the trustee of a railroad in reorganization has the power to operate the business of the debtor "subject to the control of the judge and the jurisdiction of the Commission . . .".

per diem accounts is "properly considered as part of the operation of the railroad in reorganization under section 77(c)(2) and is consequently governed by Commission orders", 537 F.2d at 910, and that the reorganization court "erred in its order permitting the trustee to defer payment of pre-reorganization per diem accounts." *Id.* at 913. In reaching that result the court concluded that "the reorganization court's power in determining the priority of that claim in relation to claims of other creditors has been circumscribed by the superseding authority of the Commission . . .". *Id.* at 910–11. The Seventh Circuit acknowledged that its conclusion "departs to some extent" from the decision of the Third Circuit in *Penn Central* I at 912, but added that it did not believe the result reached by it "is in conflict with the decision of the Third Circuit." *Id.* at 913.

In *Penn Central* I the Third Circuit affirmed the ruling of the reorganization court that the interline railroads were not entitled to current payment of pre-reorganization per diem accounts. In reaching that result the court of appeals concluded that the interlines "at this juncture are in exactly the same position as other suppliers of Penn Central who were unpaid for goods and services delivered prior to the filing of the reorganization petition." 486 F.2d at 528. In *Penn Central* II the Third Circuit reaffirmed the result reached in *Penn Central* I on the question of pre-reorganization per diem charges, saying

> Whatever may be the Seventh Circuit's interpretation of [*Penn Central* I], the reality is that we have expressly addressed the question of per diem accounts, and we have expressly stated that the Interlines are in the same posi-

tion with regard to these accounts as other unpaid suppliers. 486 F.2d at 528. 553 F.2d at 15.

The division of opinion between the Third and Seventh Circuits on the question of priority of per diem claims reflects fundamental differences between those courts in the views they take of the statutory powers of the reorganization court and ICC during the reorganization proceedings to affect priority of distribution of a debtor railroad's assets.

## II

In *Rock Island* the Seventh Circuit was faced only with per diem claims incurred for services performed in January, February and March 1975. Under the applicable 40-day rule[4] only the February and March claims became due after the petition was filed; the January claims became payable prior to that event.

In the case before this court the pre-reorganization claims arose in the years since 1953, and most of them are for services performed before August 1, 1969. These latter claims were never subject to the ICC prescribed rate. 332 ICC 176, 183 (1968), *supra.* Moreover, they were disputed in the District Court of the Southern District of New York, and that dispute has not been resolved. *See* note 1, *supra.* The rationale of *Rock Island* does not support petitioners' contentions that these claims were entitled to a preferred or super-priority status mandating their immediate payment. There is neither statutory authority nor clear and controlling policy considerations which deprive the court of discretion to defer payment of per diem claims for services performed before August 1, 1969.[5]

---

4. The "40-day rule", which has been in effect at all times material to the issues in this proceeding, is a rule of the AAR governing the method of determining and settling per diem interline payments. The rule reads as follows: "Car hire reports shall be forwarded to car owners not later than the tenth day of the second month following that in which car hire accrued."

5. Counsel for the ICC, while urging this court to follow *Rock Island* with respect to post-August 1, 1969 per diem claims, acknowledges that the pre-August 1, 1969 claims are not subject to immediate payment under the *Rock Island* rationale.

## III

There is no statutory basis for distinguishing pre-reorganization per diem claims from other pre-reorganization claims (except those specifically described in section 77, and noted in Part I of this memorandum) in the administration of the estate of a debtor railroad. However, the Seventh Circuit determined that it is the duty of the trustee under section 77(c)(2) to pay pre-reorganization claims for services performed after August 1, 1969.[6] Although under that section the trustee's authority to operate the debtor's business is "subject to the control of the judge and jurisdiction of the Commission . . .", the language of the section cannot be read to displace the control of the court over unpaid pre-reorganization claims, and acceptance of such a result would necessarily require rejection of settled bankruptcy principles and practice. The *Rock Island* court conceded that there is no statutory language to indicate "which policy and which authority is to predominate . . .". 537 F.2d at 910. Indeed, it is far from clear that the policies underlying section 77 would justify a construction of the statute which would effect any such erosion of the reorganization court's discretion.

The holding of the Seventh Circuit that the trustee has a mandatory duty to pay such claims leaves no room for the exercise of discretion by the reorganization court in coping with the concurrent problems of conserving assets for the benefit of creditors while maintaining in the public interest the operation of a railroad. The Third Circuit, addressing this point in *Penn Central II*, said:

A reorganization court, as a court of bankruptcy, must necessarily be equipped to deal with countless financial and operating exigencies on virtually a daily basis, few of which could have been foreseen when the Interstate Commerce Act (and I.C.C. regulations) were enacted. . . To hold that the Interstate Commerce Act mandates major repayments of funds to selected creditors, without regard to all other needs of the estate and public, would necessarily run counter to the theory underlying the administration of insolvent estates and, in particular, railroads in reorganization. . . . ·[W]hen matters peculiar to reorganization are involved which require the discretion and flexibility available in a reorganization court, primacy must be accorded to that court's determinations. *See New Haven Inclusion Cases*, 399 U.S. 392, 431, 90 S.Ct. 2054, 26 L.Ed.2d 691 (1970).

553 F.2d at 16.

Petitioners further argue that per diem claims for services performed after August 1, 1969 are entitled to special priority because they are part of a statutorily mandated system of sharing car-usage costs, and deferred payment of the claims will exacerbate a severe national rail car shortage. It is difficult to envision any disruption of the Commission's regulatory role with respect to car service from further deferral of payment of claims for services performed between August 1, 1969 and March 12, 1970, in light of the age of the claims, and the argument that their further deferral will exacerbate an existing national rail car

---

**6.** The holding of the Seventh Circuit in *Rock Island* presents problems regarding the nature of the trustee's obligations under section 77(c)(2). While that section requires the trustee, as trustee, to comply with applicable Commission orders in his operation of the railroad, there exists no explicit order of the ICC directing the trustee of a railroad in reorganization to pay pre-reorganization per diem debts. A further problem with the *Rock Island* decision is the implication that the trustee's obligation under section 77(c)(2) to pay all pre-reorganization per diem debts arose because those debts first became payable during the trustee's tenure. ("[T]he trustee is in *current* violation of

Commission orders governing all operating railroads when he refuses to pay per diem accounts which become due during the reorganization period." 537 F.2d at 911 (emphasis in original)). Despite this language, however, the order of the *Rock Island* court required payment of the January 1975 per diem debt, which had become due before the petition for reorganization was filed and before the trustee had assumed control over the operation of the railroad. There is nothing in section 77(c)(2) which mandates such a retrospective application of the trustee's duty in operating the railroad.

shortage is not persuasive. On the other hand, to require immediate payment of these claims, or even to accord them special priority, would substantially reduce the assets of Debtor's estate available for pre-reorganization creditors, and could impair the financial condition of the estate in terms of its prospects for reorganization.

█ In the absence of clear and specific statutory direction, it must be recognized that the reorganization court, as a court of bankruptcy, possesses the authority to determine the issue of priority of pre-reorganization per diem claims for services performed on and after August 1, 1969 and prior to March 12, 1970, and that the statutory scheme of railroad reorganization would not be promoted by ordering immediate payment of the claims. With respect, the court declines to follow the Seventh Circuit's *Rock Island* decision on this issue.

### IV

In accordance with this memorandum orders shall enter denying the petitions.