**12**

In the Matter of PENN CENTRAL
TRANSPORTATION COMPANY,
Debtor (three cases).

Appeal of COMMITTEE OF INTERLINE
RAILROADS in Nos. 76–1733 to 76–1735,
76–1815 and 76–2025 (five cases).

In the Matter of LEHIGH VALLEY
RAILROAD COMPANY.

In the Matter of READING
COMPANY, Debtor.

In the Matter of The CENTRAL
RAILROAD COMPANY OF
NEW JERSEY, Debtor.

Appeal of R. D. TIMPANY, Trustee of the
Property of the Central Railroad Compa-
ny of New Jersey, in No. 76–1817.

Appeal of INTERSTATE COMMERCE
COMMISSION in Nos. 76–1862 and
76–2026 (two cases).

Appeal of TRAILER TRAIN COMPANY
and American Rail Box Car Company,
in No. 76–2027.

Appeal of FRUIT GROWERS EXPRESS
COMPANY, in No. 76–2028.

Nos. 76–1733 to 76–1735, 76–1815, 76–1817,
76–1862 and 76–2025 to 76–2028.

United States Court of Appeals,
Third Circuit.

Argued Feb. 17, 1977.
Decided March 14, 1977.

William R. Glendon, Thomas C. Morrison, Donald F. Luke, Rogers & Wells, New York City, for appellant, Committee of Interline Railroads; W. Charles Hogg, Jr., Edward C. Toole, Jr., Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., Stryker, Tams & Dill, Newark, N. J., of counsel.

Henri F. Rush, I.C.C., Robert S. Burk, Acting Gen. Counsel, Charles H. White, Jr., Associate Gen. Counsel, Washington, D.C., for appellant, I.C.C.

William P. Quinn, Krusen, Evans & Byrne, Philadelphia, Pa., for appellants, Trailer Train Co., American Rail Box Car Co. and Fruit Growers Express Co.

William R. Traub, Duane Morris & Heckscher, Philadelphia, Pa., for appellee, Robert C. Haldeman, Trustee of the Lehigh Valley R. Co., Debtor.

James E. Howard, Robert Szwajkos, Philadelphia, Pa., for appellee, Trustees of the Property of Penn Central Transp. Co., Debtor.

John G. Harkins, Jr., Charles J. Bloom, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee, Consolidated Rail Corp.

Stanley Weiss, Newark, N. J., for appellee, cross-appellant R. D. Timpany, Trustee; Dean R. May, Carpenter, Bennett & Morrissey, Newark, N. J., on the brief.

Before: ALDISERT and GARTH, Circuit Judges, and STAPLETON, District Judge.*

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

The Committee of Interline Railroads and the Interstate Commerce Commission, among others, have appealed under § 24 of the Bankruptcy Act, 11 U.S.C. § 47, from reorganization court orders[1] which allow the Consolidated Rail Corporation, as agent for the debtor railroads in reorganization, to defer payment of pre-conveyance per diem obligations owed by the debtors to other interline railroads. The essence of appellants' argument is that the Commission's Car-Hire Rules, 160 I.C.C. 369, 165 I.C.C. 495 (1930), require prompt payment of all pre-conveyance per diem balances and preclude reorganization courts from permitting deferral of those debts. We are urged, on various grounds, to distinguish our recent and apparently controlling *in banc* decision *In re Penn Central Transportation Co.*, 486 F.2d 519 (3d Cir. 1973), *cert. denied*, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974) (the *Trust Funds Case*). And if we are unable to distinguish it, we are urged to "re-examine" it, particularly in light of the Seventh Circuit's recent decision in *Chicago, Rock Island & Pacific Railroad Co.*, 537 F.2d 906 (7th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977).

In the *Trust Funds Case*, we applied traditional common law trust principles to this same reorganization complex, and we concluded that "transportation and freight charges, *when collected*, are held in trust for the Interlines." 486 F.2d at 524. We further concluded that certain other inter-line accounts, including per diem accounts, were not held in trust and that, with respect to these accounts, "the Interlines at this juncture are in exactly the same position as other suppliers of Penn Central who were unpaid for goods and services delivered prior to the filing of the reorganization petition." *Ibid.* at 528. To prevail on this appeal, the Interlines and the I.C.C. must avoid the apparently controlling effect of our *Trust Funds Case.* They advance two separate rationales for disregarding the case.

### I.

▮ The I.C.C. rests its argument on the language of the Seventh Circuit in *Rock Island, supra.* In that case, the Seventh Circuit relied on the I.C.C. per diem rules to reverse a reorganization court decision which had permitted the trustee to defer payment of reorganization per diem accounts. The Seventh Circuit conceded that its conclusion with respect to the payment of per diem accounts "departs to some extent" from the conclusion we reached in the *Trust Funds Case.* It went on, however, to say:

> While the existence of a trust relationship may require payment of passenger and freight accounts, as the court found in *Penn Central*, it is not conversely true that, in the absence of a trust relationship, payment of per diem accounts is *not* required. We view the question before us as essentially a question of statutory construction and have resolved it upon a consideration of the applicable provisions of Section 77 [of the Bankruptcy Act, 11 U.S.C. § 205] and the policies they represent. We do not believe that our reasoning or the result we have reached is in conflict with the decision of the Third Circuit.

---

* Honorable Walter K. Stapleton, of the United States District Court for the District of Delaware, sitting by designation.

1. The following orders are involved in these consolidated appeals: Orders No. 2297 and 2409, *In the Matter of Penn Central Transpor-* *tation Co., Debtor;* Order No. 355, *In the Matter of Lehigh Valley Railroad Co., Debtor;* Order No. 1071, *In the Matter of Reading Co., Debtor;* Order No. 836, *In the Matter of Central Railroad Co. of New Jersey, Debtor.*

We believe that the I.C.C.'s reliance on this language is misplaced. Whatever may be the Seventh Circuit's interpretation of our decision, the reality is that we have expressly addressed the question of per diem accounts, and we have expressly stated that the Interlines are in the same position with regard to these accounts as other unpaid suppliers. 486 F.2d at 528.

The Interlines make a different argument to avoid the reach of the *Trust Funds Case*. They argue that the controlling I.C.C. rules relating to per diem charges were "simply not brought to this Court's attention" in the *Trust Funds Case*. To accept this argument, we would have to embrace the novel precept that a precedent is not controlling—no matter how clear it is—if counsel in a subsequent proceeding can advance a new argument on the point. We cannot accept such a precept, especially where, as here, there is no claim of changed circumstances or newly enacted rules or legislation,but simply a claim that counsel in the *Trust Funds Case* overlooked the I.C.C. rules which are now claimed to be controlling.

## II.

But even if we were to embrace such a precept, the result here would not be different. The simple and controlling language in this case is contained in Section 601(b)(4) of the Rail Act, 45 U.S.C. § 791(b)(4):

> The powers and duties of the [Interstate Commerce] Commission under section 205 of Title 11 [§ 77 of the Bankruptcy Act], with respect to a railroad in reorganization in the region which conveys all or substantially all of its designated rail properties to the Corporation or a subsidiary thereof, or to profitable railroads in the region, pursuant to the final system plan, and the requirement that plans of reorganization be filed with the Commission, *shall cease upon the date of such conveyance.* (Emphasis added.)

Whatever force the Commission's rules may have for railroads in reorganization not subject to the Rail Act, the amply clear Congressional intent here is that the Commis-

sion's bankruptcy jurisdiction over Rail Act railroads in reorganization *ceases* on the date of conveyance, April 1, 1976. The railroads in *Rock Island* were not subject to the Rail Act. Accordingly, the result in that case quite properly rested upon the trustee's duty under Section 77(c)(2) of the Bankruptcy Act to comply with the Commission's orders in operating the railroad. But here Congress has clearly indicated that the Commission's powers with respect to the reorganization proceedings have ceased. Its orders, therefore, cannot possibly have the controlling effect urged by appellants.

### A.

■ The Interlines and the I.C.C. raise essentially two objections to the application of § 601(b)(4) to the I.C.C.'s per diem rules. They argue, first, that that section merely divests the I.C.C. of its Bankruptcy Act power, not its Commerce Act power, and that the per diem rules were promulgated under the latter power. Second, they argue that, even if the I.C.C.'s power ended on the date of conveyance, the per diem obligations were incurred prior to that time, while the Commission's rules still had effect, and must, therefore, be paid immediately. We are not persuaded by either of these arguments.

The I.C.C. here is not exercising its traditional Commerce Act power to regulate operating railroads. Rather, it is asserting a power to affect the priority of distribution of assets in a Rail Act reorganization, a power expressly conferred on the district court by § 601(b)(4). While it is clear, from the statute itself, that the Commission's powers under § 77 of the Bankruptcy Act continue to apply in Rail Act proceedings "to the extent that the railroad in reorganization continues to operate any line of railroad," § 601(b)(4), it is equally clear that the Commission's authority is at an end when railroading operations have ceased. Congress went so far as to set a specific date—the date of conveyance—for cessation of the Commission's powers in Rail Act reorganization proceedings. The Commis-

sion does not revive its powers by purporting to exercise them under the Interstate Commerce Act rather then the Bankruptcy Act. Indeed, § 601(b)(1) expressly states that "[t]he provisions of the Interstate Commerce Act . . . are inapplicable (A) to actions taken under this chapter to formulate and implement the final system plan . . . and (B) to actions taken under this chapter to formulate or implement any supplemental transactions." For these reasons, we reject the argument that the I.C.C.'s per diem rules have survived the conveyance deadline and now control the district court in the reorganization proceeding.

### B.

Appellants' second argument is equally unpersuasive. It is undisputed that, prior to the conveyance, the Commission's per diem rules were binding on railroads subject to them. Indeed, all drafts for payment of per diem accounts presented prior to April 1, 1976, have been paid. The drafts contested here, however, were not presented for payment until after that date. But drafts presented after that date are no longer subject to the Commission's rules. The fact that the rules were controlling when the debts were incurred is simply irrelevant. A creditor in reorganization cannot claim superior rights merely because he was legally entitled to immediate or prompt payment at the time the debt was incurred. Such a rule, obviously, would be unworkable because many, if not most, creditors could make that very claim.

Above and beyond these considerations, an additional comment is required respecting the ostensible conflict which it is contended exists between the provisions of the Interstate Commerce Act and those of § 77 of the Bankruptcy Act. In the first instance, we do not agree that this conflict exists. However, to the extent that tensions may exist—at least with respect to the time, mode and amount of per diem payments—they must here be resolved against the I.C.C., the Interline Railroads, and the other appellants.

It has been argued before us that pre-conveyance per diem accounts are not only entitled to priority status, but that they must in all events be immediately paid when due. We know of no statutory or other requirement which mandates our imposing such an inflexible limitation on the reorganization court's discretion. Indeed, under the Bankruptcy Act itself where provision is made for the priority classification of certain creditors, no timetable is fixed for the payment of such claims. See § 77(c) of the Bankruptcy Act, 11 U.S.C. § 205(c). Moreover, no statutory authority exists for even secured creditors to have their claims paid at a time certain. A reorganization court, as a court of bankruptcy, must necessarily be equipped to deal with countless financial and operating exigencies on virtually a daily basis, few of which could have been foreseen when the Interstate Commerce Act (and I.C.C. regulations) were enacted. To cope with these problems for the benefit of all parties, and in the public interest, requires that the reorganization court be free to exercise its discretion and to be immediately responsive to conflicting and varied demands which arise. To hold that the Interstate Commerce Act mandates major repayments of funds to selected creditors, without regard to all other needs of the estate and public, would necessarily run counter to the theory underlying the administration of insolvent estates and, in particular, railroads in reorganization. While we recognize the authority that the I.C.C. exercises over the general operations of the nation's railroads, when matters peculiar to reorganization are involved which require the discretion and flexibility available in a reorganization court, primacy must be accorded to that court's determinations. See New Haven Inclusion Cases, 399 U.S. 392, 431, 90 S.Ct. 2054, 26 L.Ed.2d 691 et seq. (1970).

### III.

We have carefully considered the contentions raised on this appeal. Far from eroding our confidence in the *Trust Funds Case*, they reinforce our view that the case

was correctly decided and that it controls this appeal. We cannot distinguish the *Trust Funds Case*; nor would we be inclined to reexamine it if that were in our power which, of course, it is not. A panel of this court cannot overrule a decision of the court in banc, and, as we have noted, the *Trust Funds Case* was decided by the court in banc.

In No. 76–1817, cross-appellant R. D. Timpany challenges the Central Railroad of New Jersey reorganization court's conclusion that certain amounts owed the Committee of Interline Railroads for March 1976 freight balances were held in trust and had to be paid over under the *Trust Funds Case*. We are not persuaded by Timpany's argument, and we will not disturb the reorganization court's conclusion on this point.

Individual appeals have been filed by the Fruit Growers Express Company, No. 76–2028 and the Trailer Train Company and American Rail Box Car Company, No. 76–2027. The issues raised in these appeals largely overlap the issues raised by the I.C.C. and the Interline Committee. We find the individual appeals equally without merit.

The orders appealed from will be affirmed.