577 F.2d 368
 98 L.R.R.M. (BNA) 2679, 84 Lab.Cas. P 10,673
 In the Matter of ERIE LACKAWANNA RAILWAY COMPANY, Debtor.
CONSOLIDATED RAIL CORPORATION and United States Railway
Association, Appellants,
v.
TRUSTEES OF ERIE LACKAWANNA RAILWAY CO., Appellees.
 No. 76-1569.
 United States Court of Appeals,
Sixth Circuit.
 June 9, 1978.
 
 John G. Harkins, Jr., Laurence Z. Shiekman, Pepper, Hamilton & Scheetz, Charles J. Bloom, Philadelphia, Pa., Edwin Rector, Howard M. Wilchins, Jordan Jay Hillman, Cary W. Dickieson, U. S. Railway Association, Washington, D. C., William P. Kennedy, Washington, D. C., for appellants.
 Richard Jackson, Erie Lackawanna Railway Co., Cleveland, Ohio, Harry G. Silleck, Jr., New York City, for appellees.
 Before WEICK, LIVELY and ENGEL, Circuit Judges.
 WEICK, Circuit Judge.
 
 
 1
 Consolidated Rail Corporation (Conrail) and the United States Railway Association (USRA) have appealed from Order No. 506 of the United States District Court for the Northern District of Ohio, the Honorable Robert B. Krupansky presiding (Reorganization Court), in the matter of the reorganization of the Erie Lackawanna Railway Company (EL). That order, dated March 31, 1976, declared, inter alia, that the EL Trustees were to have no further liability for vacation benefits for those EL employees who were subject to collective bargaining agreements, on the ground that such agreements were assumed by Conrail as of April 1, 1976 pursuant to § 504(a) of the Regional Rail Reorganization Act of 1976 (Rail Act) as amended, 45 U.S.C. § 774(a).[1] For the reasons stated below, we vacate the order of the Reorganization Court and remand for further proceedings.
 
 
 2
 The case arose in the course of proceedings under § 211(h)(3) of the Rail Act, 45 U.S.C. § 721(h)(3), in which USRA petitioned the Reorganization Court for an order identifying cash and other current assets of the EL estate for application to certain obligations of the estate. The obligations were to include vacation benefits earned by unionized employees prior to April 1, 1976, the date of the conveyance of EL's rail properties to Conrail, but not yet received by the employees as of that date.
 
 
 3
 The Reorganization Court ordered that EL's liability for any such vacation benefits terminated as of April 1, 1976, relying on § 504(a) of the Rail Act, 45 U.S.C. § 774(a). This statute provides in the following language that during the period immediately following the conveyance to Conrail:
 
 
 4
 (Conrail) shall, as though an original party thereto, assume and apply on the particular lines, properties, or facilities acquired (,) all obligations under existing collective-bargaining agreements . . . .
 
 
 5
 Accordingly, the Reorganization Court stated (Order No. 506, at 8):
 
 
 6
 This statutory language mandates Conrail to relieve the EL estate of vacation pay liability . . . (to) all union employees, both for vacation earned in 1975 and not taken prior to conveyance, as well as any vacation allegedly earned to date in 1976.
 
 
 7
 After Order No. 506 was issued, however, Congress enacted the Rail Transportation Improvement Act of 1976 (RTIA), Pub.L. 94-555, §§ 203(a)-(b), 90 Stat. 2613 (1976), Title II of which is known as the Rail Amendments of 1976. This statute amended §§ 211(h)(1)(A)(iv) and 211(h)(2) of the Rail Act to provide that Conrail, as agent for the EL Trustees, is authorized to pay, and USRA is authorized to finance, the payments of claims as follows:
 
 
 8
 (iv) claims of employees arising under the collective-bargaining agreements of the railroads in reorganization . . . (including claims for accrued vacation and wages and similar claims arising in connection with labor and services performed) . . . .
 
 
 9
 Another provision of the RTIA, § 208(a), 45 U.S.C. § 774(e), further provides:
 
 
 10
 Any liability of an estate of a railroad in reorganization to its employees which is assumed, processed, and paid, pursuant to this subsection, by (Conrail) . . . shall remain the preconveyance obligation of the estate . . . . (Conrail) shall be entitled to a direct claim as a current expense of administration, in accordance with the provisions of section 211(h) of this Act . . . for reimbursement . . . from the estate . . . .
 
 
 11
 The plain meaning of the quoted amendments is that accrued vacation benefits remain an obligation of the estate in reorganization, and that Conrail as payor of such benefits is entitled to a claim for reimbursement against the estate as a current expense of administration. Appellees, the Trustees of the EL estate, have abandoned their original arguments to the contrary. See Supplemental Brief for Trustees at 2-3.
 
 
 12
 The legislative history of the RTIA, which was written by the same Congress as that which originally enacted § 211(h), the Railroad Revitalization and Regulatory Reform Act of 1976, Pub.L. 94-210, § 606, 90 Stat. 31 (1976), also indicates that this was the original intent of § 211(h). The House Conference Report that accompanied the RTIA, H.R.Rep.94-1743, 94th Cong., 2d Sess. 36-37 (1976), reprinted in (1976) U.S.Code Cong. & Admin.News pp. 5837, 5859-60, indicates that Congress was aware of the specific problem at issue in the present case,[2] and that it had been Congress' original intent that the EL estate be charged with liability for such vacation benefits as were "earned . . . by working for the estates in 1975 and in the first three months of 1976." Accord, Report of the House Committee on Interstate and Foreign Commerce, H.R.Rep.94-1479, 94th Cong., 2d Sess. 15-18 (1976).
 
 
 13
 Because the Reorganization Court did not have the benefit of the clarifying gloss on § 211(h) provided by the RTIA and its legislative history, we vacate the Court's order and remand for consideration of the proper application of the 1976 Rail Amendments to vacation benefits under EL's collective-bargaining agreements.
 
 
 14
 This Court was advised at oral argument of this case on June 7, 1977, that settlement negotiations were in progress which would obviate a judicial decision on this issue. The Court has granted the parties repeated extensions of time to pursue a settlement, the last of which expired on April 3, 1978. Although the parties have failed to meet their final deadline, they assert that a settlement has nevertheless been reached subject only to approval by the United States Department of Justice. We believe, however, that ten months' delay has been adequate, and if a final settlement is not presented promptly the Reorganization Court should proceed to decide this issue.
 
 
 15
 Complex factual and legal questions remain to be decided on remand. Under the terms of the various union contracts in force at the time of conveyance, an employee could qualify for vacation benefits in a given calendar year only by having fulfilled a work requirement during the previous calendar year. The rights of yard and road personnel to the following year's vacation benefits vested when employees accrued work time of 100 days and 160 days respectively. Some personnel employed aboard trains could also accrue work time under a provision which equated 100 miles on the road to one basic day of service. Thus, according to the testimony of EL'S General Manager of labor relations and safety (Transcript of March 22, proceedings at 66) certain personnel might well have satisfied in three months or less, their full requirement for vested vacation benefits (Tr. 70-71). Furthermore, it appears that some road employees might have required seven months or longer to accumulate their work requirement.
 
 
 16
 The present controversy therefore concerns the benefits of three classes of employees: (1) employees whose rights to 1976 benefits vested in 1975 but who has not yet taken either vacation or vacation pay prior to April 1, 1976; (2) employees whose rights to 1977 benefits vested between January 1st and March 31, 1976; and (3) employees whose rights to 1977 benefits vested after March 31, 1976, in part on the basis of work done during the first quarter of the year, i. e., for EL.
 
 
 17
 There has been, as yet, no factual determination as to how many employees, if any, actually possessed vested rights falling into these three classes. It also remains to be determined whether rights vesting after conveyance, if any, constitute "accrued vacation . . . arising in connection with labor and services performed," and rights "earned . . . by having worked for the estates . . . in the first three months of 1976" within the contemplation of the Rail Act as amended, and of the relevant collective-bargaining agreements. A further question is whether Congress intended the Rail Amendments of 1976 to apply prospectively only, i. e., to rights accrued, or benefits paid, subsequent to October 1, 1976, the effective date of the Amendments.
 
 
 18
 Accordingly, the order of the Reorganization Court with respect to vacation benefits is vacated, and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Reorganization Court stated:
 
 
 [6]
 No liability of EL exists in respect of vacation allowance for employees of EL subject to collective bargaining agreements assumed by ConRail pursuant to Section 504(a) of RRA; and no liability of EL exists in respect of vacation allowance for other employees of EL except (a) in the case of such employees accepting offers of employment with ConRail to the extent ConRail actually experiences out-of-pocket cost by reason of their taking a vacation in 1976 earned in 1975, and (b) in the case of such employees who do not accept or are not offered employment with ConRail vacation pay for a vacation earned in 1975 and not in fact taken
 No argument regarding the latter part of this paragraph, which relates to the vacation benefits of non-union employees, has been addressed to this Court on appeal.
 Other aspects of Order No. 506 were addressed previously by this Court in In Re Erie Lackawanna Ry. Co., Debtor, Appeal of Conrail and USRA, 563 F.2d 784 (6th Cir. 1977) (No. 76-1569), to which reference is made for further discussion of the facts of this case. For an explanation of § 211(h) of the Rail Act and other relevant statutes, see In Re Erie Lackawanna Ry. Co., Debtor, Appeal of Conrail, 558 F.2d 339 (6th Cir. 1977), and In Re Erie Lackawanna Ry. Co., Debtor, Appeal of Non-Contract Retirees, 548 F.2d 621 (6th Cir. 1977).
 
 
 [2]
 The Conference Report referred specifically to "appeal(s) . . . pending before the Third and Sixth Circuits," referring apparently to this case, as well as to In Re Penn Central Transp. Co., 411 F.Supp. 1079, 1086-90 (E.D.Pa.1976), aff'd on other grounds, 553 F.2d 12 (3d Cir. 1977). Another case arising in the Third Circuit that reached the same result as that reached below is In Re Central R. R. Co. of New Jersey, 425 F.Supp. 1055, 1068-71 (D.N.J.1977)