In the Matter of The ANN ARBOR RAILROAD COMPANY, Debtor.

John M. CHASE, Jr., Trustee of the Ann Arbor Railroad Company, et al., Appellant,

v.

COMMITTEE OF INTERLINE RAILROADS, Appellee.

No. 79–1043.

United States Court of Appeals, Sixth Circuit.

Argued April 17, 1980.

Decided June 23, 1980.

Joseph S. Radom, Thomas B. Radom, Southfield, Mich., for appellant.

William R. Glendon, Andrew M. Low, Donald F. Luke, Rogers & Wells, New York City, Frederick C. Nash, Detroit, Mich., for appellee.

Before WEICK and JONES, Circuit Judges and PHILLIPS, Senior Circuit Judge.

WEICK, Circuit Judge.

The Trustee of the bankrupt Ann Arbor Railroad Company (Ann Arbor) has appealed to this court from the judgment of the District Court, which held that interline freight revenues earned by the Interlines but collected by Ann Arbor on their behalf under the regulations established by the Interstate Commerce Commission, pursuant to the Regional Rail Reorganization Act and accounting procedures prescribed by the rules of the Association of American Railroads are held in trust for and must be paid by the Trustee to the Interlines entitled thereto.

When a shipment of freight is moved over the lines of a number of connecting railroads, the freight revenues are usually collected either by the originating carrier or the delivering carrier. The shipment is moved under a Bill of Lading issued by the originating carrier and is moved over the lines of the other carriers by waybills. The collecting carrier, whether or not in bankruptcy, is permitted only to retain the charges which it earned and to which it is entitled for services over its line and it must promptly remit to the other carriers the pro rata shares for services over their respective lines. It would certainly be very inconvenient if each shipper had to make separate arrangements with each connecting carrier. The interline rail network, as above described, assures that the Nation's railroads function as a single system.

The District Court relied on and followed a landmark decision of the Court of Appeals for the Third Circuit sitting en banc *In re Penn Central Transportation Company,* 486 F.2d 519 (3rd Cir. 1973), *cert. den.,* 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974). This decision has been referred to as the "Trust Funds Case". The rule was applied again by the Third Circuit with respect to pre-conveyance freight revenues *In re Penn Central Transportation Company,* 553 F.2d 12 (3rd Cir. 1977). Over the years, a number of District Courts including the District Court in the present case, have followed "The Trust Funds Case" and directed the prompt payment of such revenues whether collected prior to bankruptcy or subsequent thereto prior to the conveyance of the carrier's rail properties to Consolidated Rail Corporation under the provisions of the Regional Rail Reorganization Act of 1973, as amended, 45 U.S.C. § 701 *et seq.* E. g., *In*

*re Erie Lackawanna Ry. Co.*, Order No. 506, No. B72–2838 (N.D.Ohio, March 31, 1976) involving pre-conveyance freight revenues which is sub judice; *In re Chicago, Milwaukee, St. Paul & Pacific R. R. Co.*, Order No. 1, No. 77B–8999, (N.D.Ill., Nov. 20, 1977) also involving pre-bankruptcy freight revenues. See also, *Matter of Central Railroad Company of New Jersey*, 521 F.2d 635, 637 n. 3 (3rd Cir. 1975); *Matter of Penn Central Transportation Company*, 458 F.Supp. 1234, 1331 (E.D.Pa.1978); *Matter of Reading Co.*, 413 F.Supp. 54, 55 (E.D.Pa.1976); *Matter of Reading Co.*, 398 F.Supp. 280, 281 (E.D.Pa. 1975).

Relying on these decisions, the Interlines in the present case, filed two petitions in the District Court, alleging that such revenues were held in trust by Ann Arbor or the bankruptcy trustee for the benefit of the Interlines. The two petitions sought payment for freight revenues for freight shipments made to Ann Arbor prior to bankruptcy (pre-bankruptcy) and those which were collected subsequent to its bankruptcy but prior to its conveyance of the rail properties, (pre-conveyances). The District Court granted both petitions holding that the freight charges must be treated as trust funds.

The Trustee appealed to this court but only from the pre-bankruptcy order and did not appeal from the pre-conveyance order which now has become final. It is also noteworthy that Ann Arbor has been a beneficiary of the Trust Funds Case rule and the subsequent District Court decisions by collecting freight revenues where they were owed to Ann Arbor by other railroads in reorganization.

■ The Interstate Commerce Act (49 U.S.C. § 1(4)), requires all interline carriers to participate in the interstate transportation of freight, to establish joint rates and reasonable divisions thereof. No interline carrier has the option to refuse participation therein. *Southern Ry. Co. v. Flournoy*, 301 F.2d 847 (4th Cir. 1962). The very existence of the national rail transportation system is dependent upon the interconnecting rail service. *Trust Funds Case, supra*, Adams, J., concurring, page 532.

The Trustee contends that we are not bound by the decision of the Third Circuit in the "Trust Funds Case" and its subsequent decision as well as the District Court cases and we should not follow any of these decisions which the Trustee claims are erroneous. He also argues that there was no trust res and that the alleged trust funds were commingled with other funds of the collecting carrier.

■ While we agree that we are not bound by the decision of the Third Circuit, we realize that that court had extensive experience in dealing with these matters. We are persuaded by the reasoning of the court in the Trust Funds Case and the concurring opinion of Judge Adams in which Circuit Judge Weis joined, which fully considered and appropriately answered the various contentions of the bankruptcy Trustee. There was only temporary commingling of the funds which accounts for the reason that no res existed. See, *Community Services, Inc. v. U. S.*, 422 F.2d 1353, 1357, 191 Ct.Cl. 76 (1970). Furthermore, there was no intent to establish any debtor-creditor relationship and no interest was payable on the commingled funds. See, *U. S. v. Orsinger*, 428 F.2d 1105, 1112 (D.C.Cir. 1970), *cert. den.* 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 61 (1970); *In re Penn Central Transportation Co.*, 392 F.Supp. 960, 962 (E.D.Pa.1975). Actually, no equities exist in favor of the Trustee. We find no logic in the contention that one bankrupt railroad may retain funds belonging to another interline railroad, whether or not in bankruptcy, which the collecting carrier was required to pay under the established practice and procedure required by the Interstate Commerce Commission, the Regional Rail Reorganization Act and the rules of the Association of American Railroads.

These rules provide that the destination carrier in each shipment effects the distribution of the jointly earned revenues pursuant to a monthly settlement. This carrier prepares an abstract of all waybills and applies the agreed upon divisions of the total revenues in preparing summaries

showing the respective payables and receivables between it and each of the other interline carriers. These summaries are then sent to all of the carriers by the 20th of the month following the month in which the shipments were made. With respect to any two railroads, each agrees upon a balance based upon the summaries exchanged and the carrier with a balance in its favor draws a sight draft and presents it to the other carrier.

We find no merit in the contention that general creditors were not represented. They were represented by the Bankruptcy Trustee. Reliance by the Bankruptcy Trustee on the decisions in the *Tennessee Central Ry. Co.* cases, 316 F.Supp. 1103 (M.D. Tenn.1970) *reversed*, 463 F.2d 73 (6th Cir.), *cert. den.*, 409 U.S. 893, 93 S.Ct. 119, 34 L.Ed.2d 150 (1972), and Memorandum Opinion No. Bk. 67–2263 (M.D.Tenn., May 24, 1973), *aff'd*, 498 F.2d 904 (6th Cir. 1974), is misplaced except for the fact that this court never passed upon the issues involved in the present case.

The District Court was correct in following the Third Circuit and the other District Court cases. The judgment of the District Court is affirmed.