VAN DUSEN, Senior Circuit Judge,
concurring.
I concur in the majority’s disposition of this case; however, my conclusion is based on different reasoning than that contained in the majority opinion. I believe that per diem liabilities incurred before reorganization are unsecured debts and that a reorganization judge has the authority to defer payment of such debts under §§ 77(c)(7) and 77(7) of the Bankruptcy Act, 11 U.S.C. § 205(c)(7) and § 205(/).[1] This court has previously ruled, however, that under § 77(c)(2) of the Bankruptcy Act, 11 U.S.C. § 205(c)(2), the reorganization judge cannot defer payment of per diem charges which are required by ICC rules and regulations.[2] In re Chicago, Rock Island & Pacific Railroad Co., 537 F.2d 906 (7th Cir. 1976), cert. denied sub nom. Gibbons v. Atchison, Topeka & Santa Fe Railway Co., 429 U.S. 1092, 97 S.Ct. 1102, 51 L.Ed.2d 537 (1977). I disagree with the Rock Island holding because I believe its rule inflexibly imposes a major liability on a railroad during reorganization. Since reorganization is designed to provide a railroad with a period in which it may defer liabilities and restructure its capital under court supervision, the Rock Island court’s imposition of the per diem liability on the debtor line is likely to interfere with the effectiveness of the Railroad Reorganization Act. Both the First and Third Circuits have rejected the Rock Island holding for this reason. See Matter of Boston & Maine Corp., 600 F.2d 307, 311-12 (1st Cir. 1979); Matter of Penn Central Transportation Co., 553 F.2d 12, 16 (3d Cir. 1977). See also In re Penn Central Transportation Co., 486 F.2d 519 (3d Cir. 1973) (en banc), cert. denied, 415 U.S. 990, 94 S.Ct. 1588, 39 L.Ed.2d 886 (1974), and Matter of Penn Central Transportation Co., 458 F.Supp. 1234, 1330-34 (E.D.Pa.1978).
Moreover, Congress has rejected the Rock Island holding in the Bankruptcy Reform *50 Act of 1978, P.L.No.95-598 § 1166, 11 U.S.C. § 1166,[3] which applies to reorganizations filed after October 1, 1979, and provides that the timing of the payment of per diem claims is exclusively in the discretion of the reorganization court.[4] Although the Reform Act does not apply to this case, which was filed before October 1, 1979, it does give clear guidance as to congressional intent concerning this problem.
Due to these considerations, I would affirm the district court’s order on the ground that per diem liabilities need not be paid immediately as required by Rock Island, but rather should be treated like other unsecured debts.
Also, I do not concur in the majority’s assertion that “except for the five percent maximum earned on occasion by the short-line railroads, we are not faced with a ‘mandatory’ regulation which we found in Rock Island to be controlling over the discretion otherwise available to the reorganization court under Section 77 of the Bankruptcy Act.” At 48. The majority implies that the ICC regulations provided in 49 C.F.R. § 1036 are only “mandatory” with regard to the portion of the per diem payment which is retained by the railroad company, 5% in this case, and is “non-mandatory” with regard to the amount to be passed on under the non-equity lease to Itel, 95% in this case.
I can find no support in the ICC regulations and rulings for this position. Section 1036.1 of the regulation provides that per diem liabilities shall be paid “to the owning railroads.”[5] The ICC has held that per diem charges shall be paid in full on boxcars which are rented by a boxcar company to a railroad company on a non-equity lease basis. Incentive Per Diem Charges-1968, 353 I.C.C. 336, 340 & 345 (1977). Thus, the ICC has held that under 49 C.F.R. § 1036.1 the railroad company which rents a boxcar under a non-equity lease is an “owning railroad” with regard to that boxcar and must be paid 100% of the per diem. This puts a railroad company which rents a boxcar under a non-equity lease in the same position as a railroad company which holds title to its own boxcars with regard to § 1036.1.
Section 1036.1 makes no distinction between non-equity leased boxcars and other boxcars owned by railroads. Accordingly, if § 1036.1 is “mandatory” with regard to the payment of per diem charges incurred when another railroad’s own boxcars are on the debtor’s line, it is equally “mandatory” with regard to the payment of per diem charges incurred when another railroad’s non-equity leased boxcars are on the debt- or’s line. In sum, I do not believe there is a distinction between the Rock Island case and this case in regard to the “mandatory” nature, if any, of 49 C.F.R. § 1036.1.[6]

. Sections 77(c)(7) and 77(1) provide:
“(7) Time for filing and proof of claims. The judge shall promptly determine and fix a reasonable time within which the claims of creditors may be filed or evidenced and after which no claim not so filed or evidenced may participate except on order for cause shown, the manner in which such claims may be filed or evidenced and allowed, and for the purposes of the plan and its acceptance, after notice and hearing, the division of creditors and stockholders into classes according to the nature of their respective claims and interests. Such division shall not provide for separate classification unless there be substantial differences in priorities, claims, or interests.
“(1) Operative as voluntary petition for adjudication. In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor’s petition was filed.” (Emphasis supplied.)
Together these subsections set forth the fundamental rule of railroad reorganization. They provide that the reorganization court establishes the rights and priorities of creditors presenting claims against the estate and determines when those claims shall be paid. Matter of Boston & Maine Corp., 600 F.2d 307, 310 (1st Cir. 1979).

. The pertinent rules and regulations are 49 C.F.R. § 1036 and Rules for Car Hire Settlements, 160 I.C.C. 369, 165 I.C.C. 495 (1930).

. Section 1166 provides:
“§ 1166. Effect of Interstate Commerce Act and of Federal, State, or local regulations.
“[T]he trustee and the debtor are subject to the provisions of the Interstate Commerce Act (49 U.S.C. § 1 e£ seq.) that are applicable to railroads, and the trustee is subject to orders of any Federal, State, or local regulatory body to the same extent as the debtor would be if a petition commencing the case under this chapter had not been filed, but-(1) any such order that would require the expenditure, or the incurring of an obligation for the expenditure, of money from the estate is not effective unless approved by the court;

. The Senate version of the Reform Act would have codified the Rock Island view. S. 2266 § 1169, 95th Cong., 1st Sess.; see S.Rep.No. 989, 95th Cong., 1st Sess. 134 (1978). The House amendment ultimately enacted as § 1166 rejected Rock Island as violative of the principle of equal treatment of creditors. See [1978] U.S.Code Cong. & Admin.News, pp. 5787, 6479.

. 49 C.F.R. § 1036.1 provides:
“§ 1036.1 Application.
Each common carrier by railroad subject to the Interstate Commerce Act shall pay to the owning railroads, including the owning railroads of Canada, the additional per diem charges set forth in § 1036.2 on all boxcars and gondola cars shown below, while in the possession of nonowning railroads and subject to per diem rules. These charges are in addition to all other per diem charges currently in effect or prescribed.”

. The majority relies on the fact that Itel is not required under 49 C.F.R. § 1036.4 to reinvest its receipts from per diem payments in new boxcars to find that § 1036.1 is not “mandatory” in this case. I believe the different restrictions on *51 the use of the per diem charges received by Itel and the per diem charges received by a railroad which exist under § 1036.4 are irrelevant to the question of whether the payment of the per diem charges itself is “mandatory” under § 1036.1.